1   DAVID M. HELBRAUN (SBN 129840)
    **HELBRAUN LAW FIRM**
2   180 Sutter Street, Suite 200
    San Francisco, California 94104
3   Telephone: (415) 982-4000
    Facsimile: (415) 352-0988
4
    DAVID HICKS, APLC (SBN 053750) (Fee Counsel)
5   2200 Powell Street, Suite 990
    Emeryville, CA 94608
6   Telephone: (510) 595-2000
    Facsimile: (510) 594-9555
7
    Attorneys for Plaintiff
8   STEPHANIE HARRINGTON

9

                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12  STEPHANIE HARRINGTON,            )   Case No. C04-00958 JSW
                                     )
13              Plaintiff,           )   **PLAINTIFF'S MEMORANDUM OF**
    v.                               )   **POINTS AND AUTHORITIES IN**
14                                   )   **SUPPORT OF PLAINTIFF'S MOTION**
    CITY OF NAPA, a municipal entity,)   **FOR ATTORNEY'S FEES AND COSTS**
15  POLICE OFFICER DEBBIE            )
    PEECOOK, POLICE OFFICER BRETT    )
16  POTTER, in their individual and official )   Date: October 14, 2005
    capacities, and DOES 1-100, Jointly and )   Time: 9:00 a.m.
17  Severally,                       )   Court: 2, 17th Floor
                                     )
18              Defendants.          )   Honorable Jeffrey S. White
                                     )
19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3

I.      SUMMARY OF ARGUMENT..................................................................1

4

II.     INTRODUCTION.................................................................................2

5

6

III.    THE TRIAL REFLECTS PLAINTIFF'S COUNSEL'S EFFICIENCY AND _____

7

        EFFECTIVENESS................................................................................2

8

IV.     DEFENDANTS REJECTED ALL SETTLEMENT EFFORTS..............................3

9

10

V.      PLAINTIFF IS ENTITLED TO ATTORNEYS FEES AND COSTS UNDER

11

        42 U.S.C. § 1988...............................................................................4

12

VI.     THE PURPOSES OF THE FEDERAL FEE-SHIFTING STATUTE REQUIRE A
        FULLY COMPENSATORY FEE, IRRESPECTIVE OF THE AMOUNT OF

13

        DAMAGES.......................................................................................6

14

VII.    THE LODESTAR...............................................................................8

15

VIII.   THE HOURS CLAIMED ARE REASONABLE ..........................................8

16

IX.     CLAIMED HOURLY RATES ARE REASONABLE...................................11

17

X.      COMPLEXITY, SKILL AND EXPERIENCE OF COUNSEL, CONTINGENCY,
        AND QUALITY OF LAWYERING, BEAR ON THE HOURLY RATE IN

18

        FEDERAL LODESTARS.......................................................................13

19

X.      CONCLUSION................................................................................ 15

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CONSTITUTION & FEDERAL STATUTES                                    Page

Fourth Amendment, United States Constitution ....................................................................4

Title 42 U.S.C. § 1983 ............................................................................................1, 4

Title 42 U.S.C. § 1988 ............................................................................................1, 4

RULES

ABA Model Code Prof. Responsibility, DR 2-106(B)(8) ......................................................13

ABA Model Rules Prof. Conduct, Rule 1.5(a)(8)...............................................................13

Calif. Rules Prof. Conduct, Rule 4-200(B)(9).........................................................................13

CASES

Bankston v. State of Illinois, 60 F.3d 1249, 1256 (7th Cir. 1995)..............................................10

Barrios v. California Interscholastic Federation, 277 F.3d 1128, 1134 (9th Cir. 2002).............5, 6

Bauer v. Sampson, 261 F.3d 775, 786 (9th Cir. 2001)................................................................5

Beaty v. BET Holdings, Inc., 222 F.3d 607, 612 (9th Cir. Cal. 2000)..........................................14

Bihun v. AT&T Information Systems, 13 Cal.App.4th 976, 997 (1993) ....................................12

Blanchard v. Bergeron, 489 U.S. 87, 96 ...................................................................................6

Borunda v. Richmond, 885 F.2d 1384, 1392 (9th Cir. 1988)......................................................5

Brandau v. State of Kansas, 68 F.3d 1179 (10th Cir. 1999) ......................................................6

Brandon v. Holt 469 US 464, 83 L Ed 2d 878, 105 S Ct 873 (1985)...........................................1

Burston v. Commonwealth of Virginia, 595 F. Supp. 644, 653 (E.D.Va. 1984)...........................8

Chalmers v. City of Los Angeles 796 F.2d 1205 (9th Cir. 1986) amended 808 F.2d 1373 (9th Cir. 1987) ...................................................................................................................................8

City of Burlington v. Dague, 505 U.S. 557, 562 (1992) ..........................................................8, 9

Clark v. Los Angeles, 803 F.2d 987 992 (9th Cir. 1986)............................................................12

Cowan v. Prudential Ins. Co. of America, 935 F.2d 522, 527 (2nd Cir. 1991)............................14

Crommie v. California Public Utilities Commission, 840 F. Supp. 719 (N.D. Cal. 1994), aff'd sub nom, Mangold v. California PUC, 67 F.3d 1470 (9th Cir. 1995)..................................4, 6, 13, 14

Davis v. City and County of San Francisco 976 F.2d 1536, 1945  (9th Cir. 1990)....................5, 11

Farrar v. Hobby, 506 U.S.103 (1992).......................................................................................5

Feminist Women's Health Ctr. v. Blythe, 32 Cal.App.4th 1641(1995), *cert. den*. 116 S. Ct. 514 (1996) ..........................................................................................................................9

Ferland v. Conrad Credit Corp, 244 F3d 1145, 1148 (9th Cir. 2001).........................................9

Gates v. Deukmejian, 987 F.2d 1392, 1404 (9th Cir. 1993)........................................................9

Gates v. Gomez, 60 F.3d 525, 534 (9th Cir. 1995).....................................................................10

Guam Society of Obstetricians & Gynecologists v. Ada,100 F3d 691, 700 (9th Cir. 1996)...9, 10

Harris v. Marhoefer, 24 F3d 16 (9th Cir. 1994)............................................................................5

Harris v. McCarthy 790 F.2d 753, 758-759 (9th Cir. 1986)......................................................12

Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983).........1, 4, 7, 8, 9

Hutto v. Finney, 437 US 678, 57 L Ed 2d 522, 98 S Ct 2565 (1978)............................................ 1

In Re NuCorp Energy, Inc. 764 F.2d 655 (9th Cir. 1985) (citing cases)....................................12

Lovell v. Poway Unified Sch. District, 79 F3d 1510, 1520 (9th Cir. 1996)...............................1, 9

Lucas v. White, 63 F.Supp.2d 1046, 1063 (N.D. Cal. 1999).........................................................8

Maine v. Thiboutot (1980) 448 U.S. 1, 5 L.Ed 2d 555, 100 S.Ct 2502........................................5

Mangold v. California Public Utilities Commission, 67 F.3d 1470 (9th Cir. 1995)................4, 13

Marek v. Chesny, 473 U.S. 1, 31, 105 S. Ct. 3012, 87 L. Ed. 2d 1, (1985)..................................8

McGinnis v. Kentucky Fried Chicken, 42 F3d 1273, 1276 (9th Cir. 1994)..................................9

McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 358 (1995)............................................8

Morales v. City of San Rafael, 96 F.3d 359 (9th Cir. 1996).........................................................5

New York Gas Light Club, Inc. v. Carey, 447 U.S. 54, 68 (1980) ................................................5

O'Neal v. City of Seattle, 66 F.3d 1064, 1068 (9th Cir. 1995).....................................................10

Perkins v. Mobile Housing Bd. 847 F.2d 735, 738 (11th Cir. 1988)...........................................10

City of Riverside v. Rivera, 477 U.S. 561 (1986) ...............................................6, 7, 8, 14

Robinson v. City of Edmond (10th Cir. 1998) 160 F3d 1275, 1283 ............................................9

Serrano v. Unruh, 32 Cal.3d 621, 643 (1982).   .........................................................................11

Stephens v. Coldwell Banker Commercial Group, Inc., 199 Cal.App.3d 1394 (1988) [overruled other grounds]............................................................................................................................5

Sundance v. Municipal Court, 192 Cal.App.3d 268, 273 (1987)...................................................8

Texas State Teachers Ass'n v. Garland Indep. Sch. Dist. (1989) 489 US 782, 103 L Ed 2d 866, 109 S. Ct 1386............................................................................................................................1, 7

U.S. v. City and County of San Francisco, 748 F. Supp. 1416 (N.D. Cal. 1990).......................11

Vo v. Las Virgenes Municipal Water Dist., 79 Cal.App.4th 440 (2000)...............................6, 10

Walker v. Carnival Cruise Lines, 107 F.Supp.2d 1135, 1145 (N.D. Cal. 2000).........................8

Woodland Hills Residents Assn v. City Council, 23 Cal.3d 917, 933 (1979) ...........................6

SECONDARY TEXTS

Leubsdorf, The Contingency Factor in Attorney Fee Awards (1981) 90 Yale L.J. 473, 480......13

Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567.................................................13

I.    **SUMMARY OF ARGUMENT**

This motion for attorneys fees and costs pursuant to 42 USC § 1988 follows a successful

42 USC § 1983 case jury trial.  The jury determined that plaintiff prevailed, awarding monetary damages for physical injury of a citizen at the hands of agents of the government, specifically two City of Napa police officers.  The award was larger than the demand that plaintiff initially made on defendants before filing suit – just for some physical therapy.  Defendants disregarded her simple plea, dismissing her right up to the present day.  Plaintiff was left no recourse other than what she could obtain through the long and painful ordeal of litigation.  Given no alternative, plaintiff proceeded to trial and prevailed, well beyond the rejected offers she initially made to defendants.  In sum, the defendants asserted their right to trial, insisting essentially that she was uninjured, unimportant and undeserving.

Plaintiff has won the right to a fully compensable fee award.  Texas State Teachers Ass'n v. Garland Indep. Sch. Dist. (1989) 489 US 782, 103 L Ed 2d 866, 109 S. Ct 1386.  Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  Because the facts of the case were inextricably bound up in a single course of conduct over a short period of time on the night of May 25, 2003, no downward adjustment is apt.  Lovell v. Poway Unified Sch. Dist. 79 F3d 1510, 1520 (9th Cir 1996).  As the Court stated on August 24, 2005, "The case was well tried, vigorously and professionally, on both sides.  It's a pleasure to watch good trial lawyers representing their clients and doing the right thing.  And I appreciate everybody's sticking with the time limits and staying within the Court's rulings and conducting themselves professionally and effectively on both sides."

Requested fees are reasonable, necessary, and mandated; the hours spent are documented by time summaries from contemporaneous records; billing judgment was exercised; hourly rates requested are appropriate, and there is a basis for the Court to enhance the requested hourly rate of Mr. Helbraun, who faced difficult burdens and performed all of his duties well.

The City of Napa, even if now a non-party, should be ordered to pay any awarded attorneys fees.  Hutto v. Finney (1978) 437 US 678, 57 L Ed 2d 522, 98 S Ct 2565; Brandon v. Holt (1985) 469 US 464, 83 L Ed 2d 878, 105 S Ct 873.

**II.    INTRODUCTION**

1

Summarizing hereafter only those facts bearing on this motion with which the Court might

2

not be as conversant with as the trial evidence, we show that plaintiff prevailed in the face of

3

difficulty.  Her every entreaty refused by defendants, plaintiff was left only with litigation, but no

4

local Napa lawyer would agree to file a claim against the City and Police Department, including a

5

lawyer who said that Officer Peecook had a reputation for being unnecessarily rough but still

6

declined to take the case. *See* Declaration of Stephanie Harrington, par. 7.

7

Plaintiff contacted about thirty-five lawyers, each turning her away. *Id., pars. 7, 8.*  David

8

Helbraun agreed to accept her difficult but merited case and face the financial consequences of a

9

possible loss, knowing he would face defendants who lacked no needed resource to be able to

10

make the process difficult, lengthy, and expensive beyond his client's means.  It was not a level

11

playing field, nor did it involve equally matched teams.  Defendants were ably represented by

12

attorneys from both the Napa City Attorney's Office and the noted firm of Hanson Bridgett

13

Marcos & Vlahos.  Discovery burdens were heavy at the hands of defendants.[1]  In meet and confer

14

efforts regarding settlement of the cost bill or any item in it, and settlement of the fee motion,

15

defendant's cited inapplicable patent law for the proposition that there is no prevailing party, the

16

verdict notwithstanding.

17

**III.    THE TRIAL REFLECTS PLAINTIFF'S COUNSEL'S EFFICIENCY AND**
**          EFFECTIVENESS**

18

19

The jury rejected the defense theory of the case, finding plaintiff's account more credible

20

than the defendant police officers'. The jury found that Officer Peecook used unreasonable and

21

excessive force; that Officer Potter wrongfully failed to intervene to prevent Peecook's excessive

22

use of force; and that Plaintiff was injured by both.  Faced with a second phase of the trial to

23

24

_____

25

[1] After exchanging initial disclosures, the parties exchanged written discovery requests. A total of
*twenty-four* (24) depositions were taken in this case. Of those, five (5) were expert depositions,

26

and three (3) were of the parties. Of the remaining sixteen depositions, *thirteen* (13) were noticed
by the defense, and three (3) were noticed by plaintiff. Defendants City of Napa and Peecook and

27

Potter ("the City defendants") noticed the deposition of Plaintiff, which was taken in Napa for
approximately 16 hours spread out over three separate days in January and February 2005.

28

Defendants noticed 40 video deposition excerpts for use at trial, but then used only *one* at trial.

1  determine entitlement to punitive damages – and well aware that previously excluded evidence

2  concerning Officer Peecook's malicious statements to Plaintiff would be allowed into evidence at

3  the punitive damages phase – defendants agreed on the record to stipulate to the judgment in the

4  first phase and to waive their post-judgment motion and appeal rights, including as to costs and

5  attorneys fees, in exchange for Plaintiff's agreement to waive the punitive damages phase of the

6  trial, which was done.  This saved everyone time.

7

8  ## IV.     DEFENDANTS REJECTED ALL SETTLEMENT EFFORTS

9        Plaintiff initially made efforts to settle privately for nothing more than physical therapy.

10  The defendants showed their cold shoulder and deaf ear and insisted on trial – which was their

11  right.

12        When the parties were required to choose a form of ADR in late 2004, counsel for the City

13  of Napa and Officers Peecook and Potter ("the City defendants") stated he would only agree to

14  Early Neutral Evaluation, because he "did not want to give any indication that they would ever

15  pay anything on this case." *See* Helbraun Declaration, par. 8.  At the Early Neutral Evaluation, the

16  Evaluator concluded that if plaintiff defeated summary judgment, she had a 40% chance of

17  winning at trial, with a "potentially dangerous" upside to Plaintiff – and he estimated the

18  settlement value of the case at that time as "$25,000 to $50,000." *Id.*  Still, the City defendants

19  refused to dignify any claim.  Plaintiff asked the ENE Evaluator to attempt to conduct a settlement

20  negotiation, and was told that the City defendants were unwilling to discuss settlement. *Id.*

21  Plaintiff and the County of Napa reached a settlement shortly after the ENE Conference. *Id.*

22        The Settlement Conference involvement of the City defendants was perfunctory.  After the

23  Motion for Partial Summary Judgment, the Court ordered this case to Settlement Conference

24  before Magistrate Judge Elizabeth Laporte.  At the Conference, Plaintiff came prepared to resolve

25  the case, if possible. *Id., par. 10.* Defendants made no offers.  After speaking with Plaintiff and

26  her counsel, Judge Laporte ordered defense counsel to again approach the Napa City Council for

27  settlement authority. *Id.*  During a break from an expert deposition in this case a week or two later,

28  defense counsel was advised of Plaintiff's willingness to substantially compromise her demand.

1   *Id.* Yet no settlement offer was ever made in response to this overture, nor in response to Judge

2   Laporte's request that the defendants go back to the City Council for authority.  No Rule 68

3   demand was made. *Id.*

4   **V.   PLAINTIFF IS ENTITLED TO ATTORNEYS FEES AND COSTS UNDER**

5       **42 U.S.C. § 1988[2]**

6       This motion proceeds of necessity.  Unrelentingly from the outset, the City defendants

7   refused every overture to settle, and, despite losing, now assert that Plaintiff is not the prevailing

8   party.  They have refused to accede even to the smallest cost item or a single hour of the work

9   done by plaintiff's counsel, despite having admitted in their summary judgment motion that

10  plaintiff's "excessive force claims (under the Fourth Amendment via Section 1983)" should

11  survive for trial.

12      Although Plaintiff did not prevail on every cause of action, Plaintiff remains the prevailing

13  party as the jury held that plaintiff was injured by defendants.  See, Hensley v. Eckerhart, 461 U.S.

14  424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) "Litigants in good faith may raise alternative

15  legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds

16  is not a sufficient reason for reducing a fee.  The result is what matters."

17      Here the result clearly exceeded plaintiff's early requests only for some physical therapy,

18  clearly exceeded what defendants contended should have been be the jury's determination, and

19  clearly indicate the need for the defendants to take stock of their conduct and case evaluations in

20  the future.

21       Under Federal  law, a plaintiff who succeeds on her claim under the applicable civil

22  rights statutes is entitled to an award of reasonable attorneys' fees.  See, e.g., Crommie v.

23  California Public Utilities Commission, 840 F.Supp. 719 (N.D. Cal. 1994), aff'd sub nom,

24  Mangold v. California Public Utilities Commission, 67 F.3d 1470 (9th Cir. 1995).  She is also

25  entitled to her out of pocket costs (which she contracted to pay to her attorney) other than expert

26  witness fees (which still must be paid, of course) under numerous 9th Circuit cases.  Harris v.

27  ─────────────────
28  [2] 42 U.S.C. §1988 provides in pertinent part: "In any action or proceeding to enforce a provision
    of section … 1983 …, the court, in its discretion, may allow the prevailing party, other than the
    United States, a reasonable attorney's fee as a part of costs…."

1  Marhoefer (9th Cir. 1994) 24 F3d 16; <u>Davis v. City and County of San Francisco</u> 976 F2d 1536,

2  1556 (9th Cir. 1990).

3      A "prevailing plaintiff" is entitled to an award of reasonable attorneys' fees unless "special

4  circumstances would render an award unjust" or the relief achieved was merely "technical" or "*de

5  minimus*." <u>See</u> <u>Farrar v. Hobby</u>, 506 U.S.103 (1992); <u>Stephens v. Coldwell Banker</u>, (1988) 199

6  Cal.App.3d 1394, 1405[3], quoting <u>New York Gas Light Club, Inc. v. Carey</u>, 447 U.S. 54, 68 (1980)

7  (discretion to deny fees to prevailing Plaintiff is "'narrow'"). <u>Borunda v. Richmond</u> (9th Cir. 1988)

8  885 F2d 1384, 1392. <u>Bauer v. Sampson</u> 261 F3d 775, 786 (9th Cir. 2001).

9      In the instant case, there are no "special circumstances" that would render an award

10  "unjust." Plaintiff has obtained significant monetary relief in excess of that which she had sought

11  from the City defendants before they left her no choice but to seek a remedy in this Court.  Only a

12  fully compensatory fee to Plaintiff's counsel will suffice.  In <u>Barrios v. California Interscholastic</u>

13  <u>Federation</u>, 277 F.3d 1128, 1134 (9th Cir. 2002), the Ninth Circuit held that in a disability access

14  case, ***either*** the $10,000 settlement ***or*** the injunctive relief obtained would justify a fully

15  compensatory attorney fee.   See also, <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 363 (9th Cir.

16  1996) (recovery of $17,500 "not nominal").

17      Plaintiff vindicated in this Court not just her right, but the general rights of the citizenry

18  under the Constitution of the United States to freedom from unwarranted and unjustified injury by

19  agents of the government, acting under color or law.  Without such vindication being available, no

20  one is accountable, and wrongful conduct such as that in this case becomes a step down the path

21  to abuse of power.  Society benefits when individual citizens vindicate the principle that no one is

22  above the law – we all must follow the law and our sworn duties.

23      Given the importance of the vindication of the Constitutional right not to be subject to

24  unnecessary, unreasonable police force, and the necessity of private actions to right wrongs of

25  those imbued with the power of government, it is clear that this case and its result represent much

26  more than "*de minimus*" relief.   Perhaps the most important aspect of this case is that it serves to

27
28
_____

[3] A few California Opinions are cited because California exercises concurrent jurisdiction over
§1983 actions and awards fees under § 1988, deferring to Opinions of the federal courts.  <u>Maine v.</u>
<u>Thiboutot</u> (1980) 448 U.S. 1, 5L Ed 2d 555, 100 S Ct 2502.

1   ensure that police officers, themselves entrusted with enforcement of the law, do not think

2   themselves untouchable when they themselves violate those same laws.  It also serves to remind

3   that unthinking loyalty to those who engage in unlawful acts is not acceptable.

4
5   **VI.   THE PURPOSES OF THE FEDERAL FEE-SHIFTING STATUTE REQUIRE A
        FULLY COMPENSATORY FEE, IRRESPECTIVE OF THE AMOUNT OF
6       DAMAGES**

7           Plaintiff recognizes that her reasonable attorneys' fees exceed the amount of damages

8   awarded.   The fundamental objective of private attorney general fee statutes is "to encourage suits

9   effectuating a strong [public] policy by awarding <u>substantial</u> attorney's fees...to those who

10  successfully bring such suits."  <u>Woodland Hills Residents Assn v. City Council</u>, 23 Cal.3d 917,

11  933 (1979) (emphasis added). <u>See also</u> <u>Crommie</u>, <u>supra</u>, 840 F.Supp. at 725 (fee award must be

12  large enough "to entice competent counsel to undertake difficult public interest cases").  The

13  value of civil rights cases cannot be measured in monetary terms alone:  "[W]e reject the notion

14  that the value of civil rights action for damages constitutes nothing more than a private tort suit

15  benefitting only the individual plaintiff whose rights were violated.  Unlike most private tort

16  litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that

17  cannot be valued solely in monetary terms."  <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 96 (1989)

18  (citations omitted).

19          To encourage counsel to take these cases, the courts have uniformly rejected any "rule of

20  proportionality" that would cap or limit fee awards by the amount of damages recovered.  See <u>e.g.</u>

21  <u>Riverside v. Rivera</u>, 477 U.S. 561 (1986) (affirming fee award of $245,000 to plaintiff who won

22  $33,350 in damages).[4] Small and large cases are equally entitled to full vindication.  <u>Hensley</u>,

23  <u>supra</u>, held that winning is a "generous" "threshold" standard, which once crossed results in fully

24  compensable fees.  Overriding several Circuits, the high court held that a party need not prevail

25  _____

26  [4] See also, <u>Brandau v. State of Kansas</u>, 68 F.3d 1179 (10th Cir. 1999) (fee award of $41,598.13 in
    sex harassment case even though only $1 in nominal damages); Compare, <u>Vo v. Las Virgenes</u>
27  <u>Municipal Water Dist.</u>, 79 Cal.App.4th 440 (2000) (affirming $470,000 fee award although
    damages $37,500); <u>Barrios</u>, <u>supra</u> ("fully compensatory fee" should be awarded for $10,000
28  settlement).

1   on the central issue in the case to be entitled. <u>Texas State Teachers Ass'n v. Garland Indep. Sch.</u>

2   <u>Dist.</u> (1989) 489 US 782, 103 L Ed 2d 866, 109 S. Ct 1386.

3      It was precisely because the potential damages in such cases generally would not provide a

4   sufficient incentive for attorneys to take them, no matter how important the underlying rights, that

5   fee-shifting statutes were enacted.  See <u>City of Riverside v. Rivera</u>, 477 U.S. at 578 ("private

6   sector fee arrangements [are] inadequate to ensure sufficiently vigorous enforcement of civil

7   rights;" to ensure representation, Congress "determined that it would be necessary to compensate

8   lawyers for all time reasonably expended on a case").  <u>City of Riverside v. Rivera</u>, 477 U.S. at

9   575.

10     Similarly, because the level of fees often greatly depends on the tactics employed by the

11  defense, counsel must be ensured of a fully compensatory fee or they will not take cases against

12  aggressive, well-funded defendants such as those who are funded by the very taxpayers who are

13  injured: "A defendant may litigate the case vigorously, as indeed should be done, further

14  increasing the number of hours required to prosecute the case successfully.  To limit plaintiff's

15  attorneys' fees to the dollar amount of the recovery would force a number of victims of

16  discrimination to go unredressed.  The Court believes that such a result would be contrary to

17  Congress' purpose in authorizing fee awards in such cases." <u>Burston v. Com. of VA.</u>, 595 F.Supp.

18  644, 653 (E.D.Va. 1984).

19     The objectives of civil rights claims are two-fold.  One objective is deterrence; the other is

20  compensation for injuries. <u>McKennon v. Nashville Banner Pub. Co.</u>, 513 U.S. 352, 358 (1995).

21  Private litigants who seek redress for civil rights violations vindicate both objectives. <u>Id</u>.  Indeed,

22  disclosure, through litigation, of a violation of civil rights "'is itself important' and furthers the

23  objectives of anti-discrimination legislation." <u>McKennon</u> at 358-359.

24     As this Court has recognized:  "Congress intended for 'private citizens ... to be able to

25  assert their civil rights' and for 'those who violate the Nation's fundamental laws' not to be able 'to

26  proceed with impunity.' Accordingly, civil rights plaintiffs 'appear before the court cloaked in a

27  mantle of public interest'; to promote the 'vigorous enforcement of modern civil rights legislation,'

28  Congress has directed that such 'private attorneys general' shall not 'be deterred from bringing

1  good faith actions to vindicate the fundamental rights here involved.'" <u>Walker v. Carnival Cruise</u>

2  <u>Lines</u>, 107 F.Supp.2d 1135, 1145 (N.D. Cal. 2000), quoting <u>Marek v. Chesny</u>, 473 U.S. 1, 31, 105

3  S. Ct. 3012, 87 L. Ed. 2d 1, (1985).

4        Unless Plaintiff's attorneys are fully compensated for their efforts, the letter and spirit of

5  Congress' fee-shifting statutes will not be fulfilled: "It must be remembered that an award of

6  attorneys' fees is not a gift.  It is just compensation for expenses actually incurred in vindicating a

7  public right."  <u>Sundance v. Municipal Court</u>, 192 Cal.App.3d 268, 273 (1987).

8  **VII.**   <u>**THE LODESTAR**</u>

9        Under federal law, calculation of Plaintiff's fee begins with determination of the

10  lodestar—reasonable hourly rates multiplied by the number of hours reasonably spent.  <u>See</u>, <u>e.g.</u>,

11  <u>Hensley v. Eckerhart</u>, <u>supra</u>, 461 U.S. at 433.  Under federal law, the lodestar is presumptively

12  reasonable (if the factors no longer considered for multipliers are included in the hourly rate).

13  <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562 (1992).    In the instant case, the total lodestar

14  claimed including work on this application is $287,990.00.  *See*, Helbraun Decl., ¶¶ 22-25; Hicks

15  Decl., ¶ 22.  This is based on 681 of the more than 721 hours by Mr. Helbraun at $400 per hour;

16  9.66 paralegal hours at $100 per hour (less 5%), and 29.7 hours (less 5%) spent by Mr. Hicks at

17  $520 per hour.  It does not include the hours deleted in the exercise of billing judgment, does not

18  include the lost hours due to computer failure at the Helbraun firm's offices at the outset of the

19  case, certain paralegal time, and the 5% adjustment described in those declarations.  Plaintiff's

20  out-of pocket expenses are also fully recoverable[5] and are $49,998 less expert witness fees of

21  $29,392.  *See*, Helbraun Decl., ¶ 27-29.  Plaintiff's paralegal fees are also recoverable, and

22  amount to $966 adjusted.  *See*, Helbraun Decl., ¶ 26.

23  **VIII.**  <u>**THE HOURS CLAIMED ARE REASONABLE**</u>

24        Under Federal law, Plaintiff is entitled to be compensated for all hours reasonably spent by

25  her counsel.  "Where a plaintiff has obtained excellent results, [her] attorney should recover a *fully*

26  

27  [5] This Court has previously recognized, "It is well-established that [out-of-pocket] costs are
   recoverable as part of a fee award."  <u>Lucas v. White</u>, 63 F.Supp.2d 1046, 1063 (N.D. Cal. 1999),

28  citing, <u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205, 1216, n.7 (9th Cir. 1986), <u>amended</u>, 808
   F.2d 1373 (9th Cir. 1987).

1   *compensatory fee*. Normally, this will encompass *all hours reasonably expended on the litigation*,

2   and indeed in some cases of exceptional success an enhanced award may be justified.  In these

3   circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail

4   on every contention raised in the lawsuit." <u>Feminist Women's Health Center v. Blythe</u>, 32

5   Cal.App.4th 1641, 1674 fn. 8 (1995), <u>cert</u>. <u>den</u>. 116 S. Ct. 514 (1996), <u>quoting</u> <u>Hensley v.</u>

6   <u>Eckerhart</u>, 461 U.S. at 435 (emphasis added).

7          Cases hold that there are limitations upon denying a fully compensatory fee to a plaintiff

8   who prevails on some, but not all, claims where the facts involved a short period of time and

9   conduct inextricably bound up.  <u>Lovell v. Poway Unified Sch. Dist. (</u>9th Cir 1996) 79 F3d 1510,

10  1520; <u>Guam Soc'y of Obstetricians & Gynecologists v. Ada (</u>9th Cir. 1996) 100 F3d 691, 700;

11  <u>McGinnis v. Kentucky Fried Chicken (</u>9th Cir. 1994) 42 F3d 1273, 1276.  In <u>Robinson v. City of</u>

12  <u>Edmond (</u>10th Cir. 1998) 160 F3d 1275, 1283, the Court said "Litigants should be given the

13  breathing room to raise alternative legal grounds without fear that merely raising an alternative

14  theory will threaten the attorney's subsequent compensation."  Even were a reduction appropriate,

15  it must take into consideration that unsuccessful claims and theories may contribute to success on

16  other claims, and unsuccessful work along the way is compensable as well.  <u>Ferland v. Conrad</u>

17  <u>Credit Corp (</u>9th Cir 2001) 244 F3d 1145, 1148, <u>Cabrales v. County of Los Angeles (</u>9th Cir 1991)

18  935 F2d 1050, 1053.  Only work on unsuccessful <u>unrelated</u> claims should be reduced from the

19  lodestar.  <u>Gates v. Deukmeijian (</u>9th Cir 1993) 987 F2d 1392, 1404.

20         It may well be that cases involving such unrelated claims are unlikely to arise with great

21  frequency.  Many civil rights cases will present only a single claim.  In other cases the plaintiff's

22  claims for relief will involve a common core of facts or will be based on related legal theories.

23  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to

24  divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series

25  of discrete claims.  Instead the district court should focus on the significance of the overall relief

26  obtained by the plaintiff in relation to the hours reasonably expended on the litigation." <u>Hensley</u>,

27  461 U.S. at 435.[6]

28  _____

[6] Moreover, under California law, even a low damages award without any injunctive relief
entitles a prevailing plaintiff to a fully compensatory fee award unless "special circumstances" in

1    Once the plaintiff has presented a fully-documented claim, <u>the burden shifts</u> to the

2    defendants to show by specific evidence that the number of hours claimed is <u>not</u> reasonable.  *See,*

3    <u>Gates v. Gomez</u>, 60 F.3d 525, 534 (9th Cir. 1995).

4    The reasonableness of the hours claimed here is demonstrated by a number of factors.

5    First, Plaintiff's claim is fully documented by detailed, contemporaneous, time summaries that

6    show when and how each hour was spent.  Helbraun Decl., ¶ 22; Exh. A; Hicks Decl., ¶22. *See*

7    <u>Perkins v. Mobile Housing Bd.</u>, 847 F.2d 735, 738 (11th Cir. 1988) (counsel's "sworn testimony

8    that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time

9    required in the usual case").

10    Second, Plaintiff's counsel has exercised significant billing judgment as shown in his

11    declaration, excluding hours that may well be compensable. (Helbraun Decl., pars. 23, 24)  *See,*

12    <u>O'Neal v. City of Seattle</u>, 66 F.3d 1064, 1068 (9th Cir. 1995).  David Hicks has deleted 5% of his

13    time spent working on this motion, and has not billed for any clerical and support time.

14    Plaintiff's counsel used considerable discretion in the work he did *and did not* do.

15    Helbraun Decl., par. 12.  Any lesser effort by Plaintiff's counsel might well have threatened

16    Plaintiff's rights.  In civil rights actions like this one, a full fee award is appropriate unless the

17    defense can show that Plaintiff's counsel "could have done significantly less work without

18    jeopardizing the claims he did win." <u>Bankston v. State of Illinois</u>, 60 F.3d 1249, 1256 (7th Cir.

19    1995) . <u>See also</u> <u>Guam Society of Obstetricians v. Ada</u>, 100 F.3d 691, 700 (9th Cir. 1996)

20    (plaintiff's counsel entitled to be thorough when defendant presents vigorous opposition).[7]

21    Plaintiff's counsel have accomplished exactly what Congress and the California Legislature

22    intended: they have vindicated Plaintiff's rights and deterred further unlawful conduct.  A fully

23    compensatory fee is appropriate.

24    XXX

25    _____

26    an "unusual case" would render such an award "unjust." <u>Beaty</u>, 222 F.3d at 612.

27    [7] The number of hours claimed also compares favorably to the amounts awarded in other cases.
     For example, in <u>Vo v. Las Virgenes Municipal Water Dist.</u>, <u>supra</u>, the California Court of Appeal
28    declined to reverse an attorneys' fee award of $470,000 -- over ten times the amount of the
     plaintiff's recovery ($37,500) -- even though the plaintiff prevailed on only two of his four claims.

1  **IX.   CLAIMED HOURLY RATES ARE REASONABLE**

2          As the prevailing party, Plaintiff's counsel are entitled to the hourly rates they have

3  claimed if those rates are reasonable; i.e., if they are within the range of rates charged by attorneys

4  of comparable experience, expertise, and skill for comparable work.  See Davis v. City & County

5  of San Francisco, 976 F.2d at 1545 affirming U.S. v. City and County of San Francisco, 748

6  F.Supp. 1416 (N.D. Cal. 1990); accord, Serrano v. Unruh, 32 Cal.3d 621, 643 (1982).  The critical

7  factor is the fair market value of the work performed, as measured by the rates charged by

8  commercial firms for comparably complex federal litigation.  Id. at 1547; see also 748 F.Supp. at

9  1431 (plaintiff's attorneys entitled to rates charged by "corporate attorneys of equal caliber").

10  Here, the rates proposed are in line with those prevailing in the community for lawyers willing to

11  take on difficult and risky work.  Those rates are higher than, for instance, insurance defense rates

12  where there is little risk of nonpayment, and services are purchased in bulk.  There is no

13  likelihood that this case will lead to further work on behalf of Plaintiff.

14          Mr. Helbraun's hourly rate reflects his 18 years of experience as a lawyer, who began

15  including civil rights cases in work in 2000.  His declaration shows further support of his

16  qualifications and standing.  He is an "AV rated" lawyer.  He has somewhat specialized in civil

17  rights and police misconduct law for several years of his legal career.

18          The rates of Mr. Helbraun are well within the range of rates charged by similarly

19  experienced and skilled attorneys in the Bay Area.  See, Hicks Decl., ¶ 17; Pearl Decl.,¶ 7 et.seq.

20          Attorney partners in the 18-year range bill as follows:

| FIRM | YEAR | ATTORNEYS'  YEARS OF EXPERIENCE | RATE |
|------|------|--------------------------------|------|
| Chavez & Gertler | 2005 | 16 | $475 |
| Cooley Godward | 2003 | 15 | $475 |
| Heller Ehrman, et al. | 2004 | 16 | $446 |

| | | | |
|---|---|---|---|
| Howard Rice, et. al. | 2002 | 18 | $400 |
| Morrison & Foerster | 2001 | 19 | $450 |
| Morgan, Lewis & Bockius | 2004 | 13 | $470 |

*See*, Pearl Decl., pp. 7-9, 10-13, 15-16.  Further, rates found reasonable in 2004 and 2005 for attorneys with 19 years of experience average $485 per hour, and $425 per hour rates were found reasonable in 2003 for attorneys with 18 years of experience like Mr. Helbraun.  Pearl Decl., par. 8(a).

With soaring gasoline and housing costs in the Bay Area making the newspapers almost daily, but also Mr. Helbraun had far more responsibility in this case than associates at a large firm would have, and he has eighteen years of experience.  Attorneys' billing rates, along with overhead expenses, continue to increase dramatically. *See,*Hicks Decl., ¶17; Pearl Decl., ¶¶ 10-11.

The rate charged by Mr. Hicks also is reasonable.  Fees are regularly allowed for work on fee petitions.[8]  Mr. Hicks has tried many hundreds of cases over his 33 year career.  He has served as a judge pro tem, special master, arbitrator, mediator, and expert on attorneys' fees issues.  Mr. Hicks' exceptional experience and skills are set forth in more detail in his declaration, ¶¶ 1-7.  His current rate of $520 per hour is what he is actually paid to represent clients in the market.  Many of his peers are charging in the $600+ range.  Hicks Decl. ¶ 9.  Mr. Hicks' rate is also well within the range of billing rates for similarly experienced and skilled attorneys in the Bay Area. *See*, Pearl Declaration. *See also,* Bihun v. AT&T Information Systems, 13 Cal.App.4th 976, 997

---

[8] In Clark v. Los Angeles 803 F.2d 987, 992 (9th Cir 1986) the appellate court noted that it was "frivolous" to contend time worked on fee petitions is precluded,  stating "We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable. E.g., In Re Nucorp Energy, Inc., 764 F.2d 655 (9th Cir. 1985) (citing cases); See Harris v. McCarthy, 790 F.2d 753, 758-59 (9th Cir. 1986).

1   (1993) (affirming award of $450 per hour for FEHA action, finding the "the amount set by the

2   trial court, albeit at the 'high end,' is not 'off  the scale' in light of the record").

3
4   **X.      COMPLEXITY, SKILL AND EXPERIENCE OF COUNSEL, CONTINGENCY,
            AND QUALITY OF LAWYERING, BEAR ON THE HOURLY RATE IN
5           FEDERAL LODESTARS**

6           Without equivocation this Court praised the work of both sides' counsel throughout this

7   case.  Mr. Helbraun has substantial experience in cases of this type, and showed skill in his work.

8   Had this case been lost, Plaintiff's counsel would have received nothing for about 700  hours of

9   effort.  To allow payment to him of an unenhanced lodestar undervalues his work.  In the legal

10  marketplace, an attorney whose compensation is dependent on success – who takes a significant

11  risk – should and does expect a higher fee than an attorney who is paid a market rate as the case

12  goes along, win or lose.

13          The economic rationale for fee enhancement in contingency cases has been explained as

14  follows: "A contingent fee must be higher than a fee for the same legal services paid as they are

15  performed. The contingent fee compensates the lawyer not only for the legal services he renders

16  but for the loan of those services. The implicit interest rate on such a loan is higher because the

17  risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much

18  higher than that of conventional loans." (Posner, Economic Analysis of Law (4th ed. 1992) pp.

19  534, 567.)  "A lawyer who both bears the risk of not being paid and provides legal services is not

20  receiving the fair market value of his work if he is paid only for the second of these functions. If

21  he is paid no more, competent counsel will be reluctant to accept fee award cases." (Leubsdorf,

22  *The Contingency Factor in Attorney Fee Awards (1981) 90 Yale L.J. 473, 480; see also* Cal Rules

23  of Prof. Conduct, Rule 4-200(B)(9)  [recognizing the contingent nature of attorney representation

24  as an appropriate component in considering whether a fee is reasonable]; ABA Model Code Prof.

25  Responsibility, DR 2-106(B)(8) [same]; ABA Model Rules Prof. Conduct, rule 1.5(a)(8).)

26          Thus, in Crommie, *supra*, a two-plaintiff age discrimination action, the District Court

27  determined that a reasonable fee required a **2.0** multiplier, based on such factors as contingent

28  risk, results achieved, the difficulties inherent in such cases, and the public interest value of the

    case.  840 F.Supp. at 726.  That enhancement was affirmed by the Ninth Circuit.  67 F.3d at 1479.

---

1    The unique stresses that contingent work places on small law offices generally is

2  addressed in the declarations of David Hicks (¶¶ 10-15) and Richard Pearl (¶¶ 12-14).  Mr.

3  Helbraun describes the specific risks taken by him.  Helbraun Decl., ¶¶ 11, 26, 27.

4    A modest enhancement is required here.  If Plaintiff's counsel had represented fee-paying

5  clients, he would have been paid the lodestar amount regardless of whether he won or lost.  Basic

6  marketplace principles support a higher fee to compensate for the great risk Plaintiff's attorney

7  took to vindicate her fundamental rights.  The risk is accompanied by a delay in payment.

8    The partial summary judgment motion showed that Plaintiff faced challenging legal

9  issues, including whether probable cause existed to arrest for felony spousal abuse in light of the

10  *de minimus* injury presented by John Harrington, the issue of Officer Potter's failure to intervene,

11  and ADA claims in an atypical factual scenario.  On a number of legal issues, the parties had to

12  research and brief case law outside of the 9th Circuit or arcane issues of California law.

13    A final factor justifying enhancement is the public interest served by Plaintiff's lawsuit --

14  the fact that it vindicated important public policies.  This factor recognizes that even individual

15  lawsuits act as a deterrent to future misconduct, both by the defendant and by others. *See,*

16  Crommie, *supra,* 840 F.Supp. at 726 (noting impact of verdict on defendant's other employees);

17  Cowan v. Prudential Ins. Co. of America, 935 F.2d 522, 527 (2nd Cir. 1991); Stephens v. Coldwell

18  Banker Commercial Group, Inc., (1988) 199 Cal.App.3d 1394, 1406 overruled on other grounds

19  (individual damages actions "bring about benefits to a broad group of citizens"). As the Ninth

20  Circuit recognized in Beaty v. BET Holdings, Inc., 222 F.3d 607, 612 (9th Cir.2000), individual

21  cases "vindicate important public interests whose value transcends the dollar amounts that attach

22  to many civil rights claims....[E]ven a relatively small damages award 'contributes significantly to

23  the deterrence of civil rights violations in the future.'" 222 F.3d at 612, quoting City of Riverside

24  v. Rivera, 477 U.S. at 575.  Counsel like plaintiff's who are willing to serve the public interest

25  should be compensated accordingly.  The fee award should reflect this public benefit.

26    Fee counsel submits that the $400 per hour rate proposed by Mr. Helbraun as his market

27  rate should be increased for these factors by $75 to $475 per hour, a modest enhancement of less

28  than 20%.

1  X.   **CONCLUSION**

2       Congress' intent in enacting fee-shifting statutes as part of their civil rights laws was to

3  encourage competent attorneys to take on difficult cases, large and small, like this one.  If that

4  purpose is to be served, Plaintiff's counsel must be fully compensated for his efforts.  Plaintiff

5  respectfully requests this Court grant her motion for award of reasonable attorney's fees and costs

6  as set forth above.

7       To aid the parties in formulating a stipulated judgment, Plaintiff also request that this

8  Court make separate awards or an award identifying the following elements:

9       1.  Fees to Helbraun on the case in chief  640 hours at $475 hourly, or $304,000;

10      2.  Fees to Helbraun on post verdict time, 41.1 hours at $400 hourly, or $16,440;

11      3.  Fees to Fee Counsel, 29.7 hours at $520 less 5%, or $14,672.00;

12      4.  Fees for Paralegal 9.66 hours at $110 less 5%, or $918.00; and

13      5.  Out of pocket costs as allowed.

14  Dated:   September 7, 2005.

15  Respectfully Submitted,

16

17  HELBRAUN LAW FIRM                              DAVID HICKS APLC

18  _____/s/_____                _____/s/_____
    DAVID M. HELBRAUN                              DAVID HICKS
19  Attorneys for Plaintiff                        Fee Counsel for Plaintiff
    STEPHANIE HARRINGTON                           STEPHANIE HARRINGTON
20

21

22

23

24

25

26

27

28