1  DAVID M. HELBRAUN (SBN 129840)
**HELBRAUN LAW FIRM**
2  180 Sutter Street, Suite 200
San Francisco, California 94104
3  Telephone: (415) 982-4000
Facsimile: (415) 352-0988
4
DAVID HICKS, APLC (SBN 053750) (Fee Counsel)
5  2200 Powell Street, Suite 990
Emeryville, CA 94608
6  Telephone: (510) 595-2000
Facsimile: (510) 594-9555
7
Attorneys for Plaintiff
8  STEPHANIE HARRINGTON

9

UNITED STATES DISTRICT COURT
10
NORTHERN DISTRICT OF CALIFORNIA
11

12  STEPHANIE HARRINGTON,           )   Case No. C04-00958 JSW
                                    )
13              Plaintiff,          )   **DECLARATION OF DAVID HICKS IN**
    v.                              )   **SUPPORT OF PLAINTIFF'S MOTION**
14                                  )   **FOR ATTORNEY'S FEES AND COSTS**
    CITY OF NAPA, a municipal entity, )
15  POLICE OFFICER DEBBIE           )
    PEECOOK, POLICE OFFICER BRETT   )   Date: October 14, 2005
16  POTTER, in their individual and official )   Time: 9:00 a.m.
    capacities, and DOES 1-100, Jointly and )   Court: 2, 17th Floor
17  Severally,                      )
                                    )   Honorable Jeffrey S. White
18              Defendants.         )
                                    )
19

20

21  DAVID HICKS attests and declares as follows:

22  1. I am an attorney licensed to practice before all the courts of the States of California and New

23  York, as well as federal courts in the Northern, Central and Eastern Districts of California, of

24  Maine, and the United States Supreme Court.  I have served as panel arbitrator and as a final and

25  binding sole arbitrator for this Court.

26  2. I have personal knowledge of the facts contained in this declaration and if called as a witness,

27  am competent to and would testify thereto.

28

---

3. I am a 1972 graduate of the University Of California School Of Law at Davis. I began my career as a Deputy Attorney General for the State of California, and then became a Deputy District Attorney for Alameda County. I entered private practice in 1978 where I have served as lead trial counsel and head of litigation in each firm with which I have practiced since that time. I have completed many hundreds of trials during my career. I have served as a judge pro tem in the Superior Courts of California in four counties (San Francisco, Alameda, Contra Costa and Solano), since 1979, on thousands of matters, and have pretty much done most all of the activities that lawyers of civic-minded character typically undertake, including teaching law as an adjunct professor and lecturer, as a guest lecturer at the University of California's Institute of Governmental Studies. I am the lead core instructor for the University of California's new paralegal program. I am an honorary member of two law-related professional associations. I have served on numerous boards of directors including Goodwill Industries, Lincoln Child Center, Oakland Rotary No. 3 (the third oldest club on the planet) and the Modern Greek Studies Foundation (SFSU), to name but a few disparate examples. I have also served as a special master for the California State Bar and as a City and County Commissioner, and numerous bar association committees. I have arbitrated numerous fee matters pro bono publico, and written dozens of articles for newspaper and magazine publications &c., too many to list in a resume. I have held an a.v. rating from Martindale Hubbell since about 1984 and was among those listed in San Francisco Magazine's Super Lawyers (a list of bullies, braggarts and some really fine lawyers supposed to constitute the top 5% of lawyers) of August 2005. I am a two time recipient of the California State Bar's Wiley Manual Pro Bono Award for providing pro bono services to impecunious clients--by my calculation in excess of two million dollars worth over the past 30 years.

4. My practice includes a mix of hourly rate and contingent fee rate cases.

5. In 1980, I reluctantly accepted a civil rights case that had been turned down by more than 30 lawyers, at the special request of the Alameda County Bar Association.  I thereafter conducted what I understand to be the second longest civil rights case (Crowe v. Caifornia and consolidated and related cases) in California state history, involving more than one hundred consolidated matters, appearances from one end of the state to the other, seven appeals.  I ultimately prevailed on each of the nine causes of action I raised in the original complaint.  In that case I appeared before more than 35 different judges and ultimately secured a final judgment including a fee of $1.2 million dollars pursuant to 42 U.S.C. § 1988 in a case seeking only injunctive relief and no monetary damages.  For 15 years I was not paid on the case and it consumed everything I owned and everything I could borrow, and I often thought as those years slipped by that 3 years in jail would have been preferable.  But I remained in the case because no one else would and later no one else could have completed it.  I involuntarily became firmly knowledgeable about attorneys fees claims, and understand that the opposing firm (the late Bronson, Bronson & McKinnon), hired after judgment was entered, just on the fee motion, was paid about $425,000 to fight off any fee award in the cases.  In sum I was exercised into learning more about attorney fees than I had wished to know.

6. In that civil rights case, *Crowe v. California*, following the governmental defendants seven appeals during the process, I was deposed by lawyers for the State of California for 16 consecutive court days regarding my own fees in the aforesaid case, and the Superior Court of California awarded me, as my then market rate in 1987, my 15th year in practice, fees at the rate of $325 per/hour, which was upheld thereafter on appeals and in subsequent cases I undertook.  Using that rate as a base, my present rate is computed and set from time to time according to a Consumer

1   Price Index adjustment to that rate and is presently $520 per hour for litigation and fee

2   applications.

3   7. My resume, attached to this declaration as Exhibit A, and incorporated herein as part of my

4   qualifications, accurately sets forth a few of my educational and professional qualifications.  I

5   have done substantial work as an expert witness, chiefly regarding attorney's fees matters, and

6   legal ethics, since 1988 in more than a dozen cases in both state and federal court.  The parties

7   who have retained me have prevailed in each of those cases, in many cases recovering more in

8   fees than the underlying damages, usually because the defendants elected to litigate vigorously

9   (sometimes with excessive zeal, only to complain thereafter  about the amount of legal fees their

10   clients were called upon to pay to the parties who ultimately prevailed.  I say this in this case to

11   invite the Court's attention to, as I am mindful of, *Chalmers v. City of Los Angeles* 676 F. Supp.

12   1515 (SDCal. 1987), which teaches that "Those who elect a militant defense in the face of a

13   statute allowing attorney's fees if they are defeated must take into account the time and effort they

14   exact from their opponents," quoting *Perkins v. New Orleans Athletic Club* 429 F. Supp. 661, 667

15   (E.D. La 1976).  My review of the present file leads me to conclude that that statement of law is

16   apt in this case.

17   8. Over the past few years I have noted that housing costs have more than doubled, insurance rates

18   for my employees medical insurance increased by more than 70% and my office rent was

19   increased, at a fifth year interval, in 1997, by 78% which I thought shocking until I looked for

20   alternatives and realized I was truly "at market" and that moving my offices would bring no

21   savings in overhead.  I am aware that even governmental employers are facing difficulties with the

22   costs of medical insurance.  Of course small law firms, and solo practitioners like plaintiff's trial

---

1   counsel in this case, lack the bargaining power of the government for purchasing such essentials,

2   and must bob like a cork on the sea of market forces to survive.

3   9. My current hourly rate for non-contingent fee cases is $520 per hour payable monthly as the

4   cases progress.  This has been my rate only during 2005.  I am currently working on other matters

5   at that rate, and several more at $450 per hour that are carry over rates from the cases begun in the

6   past 3 years during which I had made no adjustment.  I was awarded that same rate in 2004 in a

7   fee matter by JAMS retired Judge, the Hon. Richard Patsey and that award was recently affirmed

8   by the Superior Court and judgment entered thereon.  In addition, I was hired in 2002 at $1,200.00

9   per hour (or a contingency fee, whichever was higher) to bring a case against the World Boxing

10  Federation, and the World Boxing Foundation, a case I deemed highly undesirable due to the

11  potential involvement of organized crime, violence, and other factors, and obtained a bench

12  judgment in excess of two million dollars from the California Superior Court, which was

13  thereafter increased by the Chancery Court of Tennessee to $7.2 million when we established that

14  the defendants had filed a fraudulent bankruptcy and transferred assets and contracts overseas to

15  conduct televised boxing events from there.  I have worked on occasion for fees somewhat lower

16  for long term (10+ years) clients with an excellent record of timely monthly payment, for close

17  relatives and as Cumis counsel, because these matters are less stressful office practice matters that

18  do not take the physical toll on me that lead counsel trial work does.

19  10. The rate I ask for services I render is the result of many factors—as is the case with most

20  private law firms, including survey data, court opinions, client demand, client demands, and

21  consulting with other plaintiffs' lawyers as to the market rates charged by Bay Area law firms for

22  comparable experience and skill.  Additionally, courts have mostly awarded me fees in civil rights

1  cases at the hourly rates I asked, which were my then current rates and which I had demonstrated

2  were within the reasonable range of market rates for persons of my experience and record.

3  11. I have qualified and testified, sometimes over objection, as an expert witness on the subject of

4  attorney's fees in jury and bench trials and in connection with fee applications, and on legislative

5  intent and legal ethics.

6  12. My hourly rates are the rates I charge when prompt payment is expected after the client has

7  been billed, and without any contingency whatsoever.  My firm and the many firms I am familiar

8  with expect a higher effective rate of compensation in cases, contingent or not, where there is the

9  risk of delayed payment or non-payment.  I have come to the opinion that where the fee is

10  determined after the fact by anyone other than me, it is in fact a contingency fee, such as fee

11  motions whenever the client lacks resources to afford to be able to purchase access to the Courts.

12  13. In my experience, and opinion, the smaller a firm is, the more dangerous is the risk incurred,

13  as there is a significant reduction in opportunities for other work to help cover fixed and variable

14  overhead.

15  14. In my experience, an enhancement to fees computed on the basis of a market hourly rate is

16  necessary to make the fee in risk of non-payment cases reasonable, and to make it feasible for

17  attorneys to take such cases.  More importantly, it is essential, if the legal profession and judiciary

18  are to affirmatively protect civil rights, that compensation be sufficiently adequate to attract

19  competent, dedicated counsel.[1]  To offer only a market rate that is recoverable only some of the

---

[1] As was stated in the Senate Report which accompanied 42 U.S.C. §1988:

  All of these civil rights laws depend heavily upon private enforcement, and fee awards
have proved an essential remedy if private citizens are to have a meaningful opportunity to
vindicate the important Congressional policies which these laws contain.

  In many cases arising under our civil rights laws, the citizen who must sue to enforce
the law has little or no money with which to hire a lawyer.  If private citizens are to be able to
assert their civil rights, and if those who violate the Nation's fundamental laws are not to be
proceed with impunity, then citizens must have the opportunity to recover what it costs them to

---

time and only in part would drive away more competent counsel and thereby deprive the public of

their most precious rights under our constitution.  State Courts in California continue to allow

contingency enhancement  via multipliers to compensate for the delays and uncertainties of

contingent fee litigation.  This Court no longer does so, instead incorporating the contingency

factor into the lodestar hourly rate, in order to recognize the difference between sure thing fee

payment cases and those with risk such as this case promised from the outset.  At the risk of

stating the obvious, if the market rate is, for example, $400 per hour for an attorney of a given

experience and expertise, he can expect to receive that rate on most of his cases.  If an attorney's

market, or regular, typical rate is diluted by the risk of losing half his cases, such a rate would

most probably not cover the cost of having the attorney's doors open to clients, and would

produce no net earnings to the lawyer.   Moreover, in many cases, such as this one, the

comparative wealth of the defendant can be used as a weapon against a smaller opponent in a way

that can easily lead, at best, to a Phyrric victory.  In my opinion this is just such a case, if a rate

adjustment would be denied.  In this case it is my opinion, and I believe readily apparent,  that an

average hourly market rate will not suffice given the risk of loss, which could occur even apart

from the merits of the case, and I therefore opine that an increased hourly rate would aptly reflect

appropriate factors and remain within the sound exercise of the Court's discretion.

---

    vindicate these rights in court.

    *Coalition for Economic Survival v. Deukmejian* 171 Cal.App.3d 954, 956, [217 Cal. Rptr. 621] (1985), quoting 1976 U.S. Code Cong. & Adm. News pp. 5908, 5910.

The purpose of 42 U.S.C. §1988 is to ensure "effective access to the judicial process" for persons with Civil Rights grievances".  *Hensley v. Eckerhart* 461 U.S. 424, 429, 433 [76 L.Ed. 2d40, 50, 103 S.Ct. 1933, 1937] (1983)  citing H.R. Rep. No. 94-1558, p.1 (1976).  An attorneys' fee award not only serves to reimburse an attorney for his efforts in bringing a civil rights suit but also serves to encourage future litigation to enforce the civil rights laws. *Coalition for Economic Survival*, supra, at page 966.

---

15. Especially for attorneys in small law firms, it is my opinion that the attorney time and expense required in taking on a civil rights case against a well-funded defendant always precludes other employment.

16. I have conducted extensive market surveys regarding the hourly fee market rate in the Bay Area, and have testified thereto as an expert witness, although I have not done a new survey in the past four years due to the press of other litigation.  I therefore obtained the declaration of Richard Pearl, filed contemporaneously therewith.  Mr. Pearl and I know each other well, have been on the same and opposite sides of cases over the years, and taught lawyers on the subject of attorney fees together.

17. I have compared the declarations of plaintiff's counsel herein with the declaration of Mr. Pearl and my own experience in practice for 33 years, and find his requested fees to be within the range that would be the market rate for a case performed with the efficiency and effectiveness shown here, which require not merely experience, but direct experience in the kind of matter handled.  In part, this is based upon the amount of time it takes a trial lawyer to develop into full competence and the fact that eventually with time, the amount of energy a lawyer may put into his cases may decline with the aging process.  In other words, a good trial lawyer, performing as lead counsel, with genuine trial experience during that time, in my opinion can reach the top of his game in about 7 or 8 years, and remains there until his or her physical capacity begins to decline with age.

18. I further believe that the hourly rate requested by Mr. Helbraun is not so high as to be unworthy of enhancement by an additional $75 per hour.  If this were a State court case, a multiplier would be available and it would most typically result in an even greater rate on its own merit, whereas, the enhanced hourly rate I propose takes into account several factors discussed in

the Motion.  He elected to request a lower figure, which in my experience is at once too low yet deferential to the Court's discretion and various factors in this case.

19.  I have found nothing in the Pearl declaration inconsistent with my own experience and opinion as to market rate attorney fees.

20. Higher hourly rates are required for attorneys who are not employees in a firm, but who hold partnership or shareholder status, or who have lead counsel duties to the court in a case, or who have law firm management responsibilities that significantly reduce their availability to work on cases.

21. In this case, I see nothing to suggest that this case involves some special circumstance that would render a fee award unjust; to the contrary, in my opinion, under the circumstances of this case the denial of costs would be unjust.  In addition, fee applicant plaintiff's counsel complied to my knowledge with his prerequisites as required by Rule 54-6.  I have discussed with attorney Helbraun the details of his having met and conferred for the purpose of attempting to resolve any disputes with respect to the fees motion and cost bill and am aware that he complied.  I was satisfied from that discussion that in fact a good faith effort was made to avoid the necessity of the motion and that compromise concessions were considered.  Fee applicant has documented as required the services rendered by each person for whose services fees are claimed, together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained.  These are contained in the declarations of David Helbraun and David Hicks.  Mr. Pearl prepared his declaration as a courtesy to declarant and as he declined a fee, I have made a charitable contribution in his name.  Fee applicants' counsel and I worked out allocations of drafting of various portions of the fee application.  Contemporary time records were kept and are available for *in camera* inspection by the Court.  And lastly, the Court has been

presented with a brief description of relevant qualifications and experience and a statement of the

customary hourly charges of each such person or of comparable prevailing hourly rates or other

indication of value of the services.

22. At the hearing on this matter, I will request a fee at $520 per hour for work on the fee

application, the preparation of this declaration, work in response to any opposition filed to the fee

application and time spent in preparing for and attending the hearing on this motion, pursuant to

law and the written fee agreement I have with plaintiff's counsel for those services, which counsel

Helbraun on behalf of plaintiff is obligated to pay me irrespective of the outcome of this motion.

At the time of this writing I have spent more, but recorded only 29.7 hours assisting Mr. Helbraun

on the fee application and supporting papers.  This included legal research on recent cases

pertaining to statutory attorney fees, consulting with and advising fee applicant, reviewing

research on market rates, oversight of preparation of declarations of Mr. Pearl and myself,

commenting on details in the fee application briefs and trial counsel's two declarations, which

were drafted and finally edited Mr. Helbraun, and preparation of this declaration and the fee

motion.  I anticipate additional work reading each case cited in any opposition unless I am already

conversant with them, assisting Mr. Helbraun in preparing a reply to any opposition, including

possible rebuttal declarations and oral argument on the motion.  On behalf of plaintiff, I ask the

Court to award fees to plaintiffs for my services in connection with the fee application by the

lodestar method, with the hours as finally determinable at the hearing on the fee motion. I have

elected in this declaration to not charge for any of the time spent by staff.  Nor do I request any

photocopying, faxing or other expense items that I normally separately bill to clients.  I propose a

5% discount on my final total hours in the exercising of billing judgment.

23.   I am informed and believe that Plaintiff's counsel David M. Helbraun expended

approximately 721 hours on this case, not including numerous additional time entries from the

middle of July through to the middle of October 2004 that were lost due to a computer crash at his

office.  Mr. Helbraun has employed billing discretion in not charging for some of his entries.

Also in the exercise of his billing discretion, he has proposed discounting his hours by 5% to 681

hours total, and has asked that time billed as paralegal time (9.66 hours) also be discounted by

5%.   Accordingly, Plaintiff is requesting that the Court make separate awards or an award

consisting of the following elements:

   Fees to Helbraun on the case in chief  640 hours at $475 hourly, or $304,000

   Fees to Helbraun on post verdict time, 41.1 hours at $400 hourly, or $16,440;

   Fees to Fee Counsel, 29.7 hours at $520 less 5%, or $14,672.00

   Fees for Paralegal 9.66 hours at $110 less 5%, or $918.00; and

   Out of pocket costs as allowed and as detailed in the "Expense" portion of the documentation

of Mr. Helbraun's time and costs attached as Exhibit "A" to Plaintiff's Appendix of Exhibits to

the Helbraun Declaration filed in support of this motion.

        I declare under penalty of perjury pursuant to the laws of the United States and the State of

California that the foregoing information is true and correct.

        Done this 7th day of September, 2005at Emeryville, Alameda County, California.


                                    _____/s/_____

                                    David Hicks

1

## EXHIBIT A

2

**David Keith Hicks**                                          2200 Powell Street, Suite 990
3   David Hicks APLC, A Calif. Prof. Law Corp.                           Emeryville CA 94608
Licensed in California & New York                               www.DavidHicksLaw.com
4   Business & Trial Lawyers                          (510) 595-2000; Fax: (510) 594-9555

5
**Education:**   Juris Doctor, University of California at Davis, 1972.   B.A., Political Science,
6   International Relations, SJSU, 1969, Humanities Honors.  Honor Societies in Journalism and Political
Science.  U.S. Army Intelligence School, Ft. Holabird, MD (Hon. Disch. 1972)
7

8   **Admitted To Practice** in California (1972) and New York; The United States Supreme Court; the
United States District Courts for Maine, and the Northern, Central and Eastern Districts of California
9   (1972); Chancery Courts of Delaware and of Tennessee (p.h.v.).

10  **Law Practice Emphasis**: Civil business and trial practice.  Real estate, Defamation, business,
11  business tort and commercial litigation; contract negotiation, foreign and domestic; product
development, protection, registration & licensing; compliance with governmental regulation and
12  related hearings; employment taxation; food, flavor and fragrance industries.  Litigation experience
in contract, insurance, complex business torts (fiduciary duties; fraud; R.I.C.O.; bad faith; unfair
13  competition, trade secrets, trade libel, civil rights in the commercial context) and other civil litigation
arising in the business context.  Dispute mediation and resolution.  Expert witness services.
14

15  **Judicial Experience as Temporary Judge:**
·     Updated training done summer 2005 as Temporary Judge, San Francisco Superior Court
16  ·     UpdatedTraining as Juvenile Court Referee, Alameda County Superior Court summer 2005.
·     Contra Costa County (two jury trials);
17  ·     Solano County;
·     San Francisco County;
18  ·     Alameda County (also business litigation arbitrator, referee, Early Disposition Program
19  commissioner (1979-), Special Master/Receivers list).  Proposed and helped implement a Trial on
Time program for the Alameda County Superior Court.
20  ·     United States District Court for the Northern District of California business litigation single
21  binding arbitrator.
·     Special Master, California State Bar.
22  ·     Quasi-judicial hearings: Commissioner, City of Oakland and Alameda County.  Early Disposition
23  Program Commissioner.  Fee Arbitration Committee, Alameda County Bar Association.

24  **Professional Standing, Associations**: Highest rating in Martindale Hubbell Bar Register of
Preeminent Lawyers.   (1990) ["a.v.," (Legal Ability: preeminent; General Recommendation:
25  Embraces faithful adherence to ethical standards; professional reliability and diligence)].  Conferee,
26  Conference to Establish Standards for Mandatory Continuing Legal Education, sponsored by
California State Bar and U. C. Regents, CEB, Los Angeles, 1990.
27

28  **Bar Association Memberships**: American; New York; California (Litigation and Business Law
Sections); American Trial Lawyers Association; Consumer Attorneys of California (Board Member);

---

**DECLARATION OF DAVID HICKS IN SUPPORT OF PLAINTIFF'S MOTION FOR FEES AND COSTS**
**Case No.  C-04-00958 JSW**

California Trial Lawyers Association (Board of Governors, Legislation Committee); Alameda Contra Costa Trial Law Lawyers Association since 1982, Pres. 1993, Life Member); San Francisco, Contra Costa, Alameda, Solano County Bars; Million Dollar Advocates Forum; Trial Lawyers for Public Justice; California State Bar American Bar Association.

**Honors:** 2005 Honoree, Modern Greek Studies Foundation; 2005 Elected to California SUPERLAWYERS (top 5%, San Francisco Magazine, Aug. 2005, in three areas: Business Litigation, Constitutional Law and Personal Injury). Martindale Hubbel's Listing of Pre-eminent Attorneys (1986-present, highest rating) Other: Honorary member Hellenic Law Society; Honorary Member, Phi Alpha Delta Legal Fraternity. State Bar of California Wiley Manuel Award; State Bar Board of Governor's Commendation for Outstanding Contributions in Legal Services; Editor's Choice Award for Outstanding Achievement in Poetry. Paul Harris Fellow, Rotary International, for International Humanitarian Service. Oakland Rotary Arts Award.

**Expert Witness**: Qualified and testified as an expert witness on legislative intent, attorneys' fees and legal malpractice (plaintiff & defense). Consultant to United States Attorney's office re: fee application defense; assistance to Nevada Attorney General re: child labor law.

**Courtroom advocacy**: Deputy Attorney General, California, and Deputy District Attorney, Alameda County 1972-1978; Civil litigator in private practice since 1978. Successfully tried more than 400 superior court trials, won more than 60 appeals and prevailed in over 120 administrative hearings before governmental bodies in regulation, taxation, licensing and labor matters (stopped counting in 1988).

**Illustrative cases** (alphabetical):
Almeida v. Peat Marwick Mitchell & Co. and consolidated class actions (represented Bank of the West in Chancery Court in Delaware and in Alameda County). Counsel for Bank of the West to represent 139 of its employees in the most complex consolidated class action case then pending before the Superior Court in Alameda County (45 lawyers). Confidential settlement facilitated.
Bash Ali v. Ron Scalf, World Boxing Federation, Inc. $2.1 Million damages judgment; Permanent Injunction against unfair business practices; restoration of Cruiserweight Championship.
Bash Ali v. Richard Feld, World Boxing Foundation of Great Britain (Chancery Court, Tennessee) $7.2 million award.
Camacho v. Sixty Minutes, Mike Wallace, Leslie Stahl et al. "Amicably settled" confidential settlement of defamation case on behalf of Director, Regional Service Center, United States Customs, San Diego. Mike Wallace breached settlement agreement to personally read apology ultimately read by Leslie Stahl. (This settlement breach settled separately for additional $200,000, not confidential or within the "amicably settled" provision).
Crowe v. State of California (qua state) & Consolidated & Related Cases (more than 100) Superior Court, Alameda County: Over 15 years in duration. Won consent judgment against the California Department of Industrial Relations Division of Labor Standards Enforcement on nine different constitutional grounds for discriminatory enforcement practices. Awarded private attorney general fees of $1.2 million dollars per federal law by the Superior Court for resolving issues of public importance and "clearly demonstrated public service motivation," during first half of case.
Drazek v. Host Marriott Corp (attorney Johnnie Cochran, Real Party In Interest). Hired by Johnnie Cochran's firm to reverse senior federal court judge's ruling prohibiting attorney's fee for services

to minor due to large fee won for another party.  On our application Court reversed itself and awarded additional attorney fees of $356,073.00.

Fletcher v. Sohrabi Enterprises.  Defense-settle case within 60 days of filing on advantageous terms.

Hidden Valley Ranch v. AVRI Companies Inc.; AVRI Companies Inc. v. Flaroma.  Negotiated reversal of two insurers' refusal to defend or indemnify insured defendant-cross-complainant in complex trade secret case and facilitated settlement of case through mediation.

In the matter of Mullin.  Recovered client's attorneys' fees in the amount of $432,000.00.

Lipscomb v. City of San Diego, Superior Court San Diego:  Won a permanent injunction against the City of San Diego precluding enforcement of its own ordinances as violative of First Amendment Commercial Free Speech.  Attorney's fees were awarded for performing services as a "Private Attorney General."

Piersen v. Lang.  Defended two defendants and settled with net cash gain for clients on cross-complaint v. Lang and recovered all costs and fees from insurer that had denied coverage.

Lombard v. Continental Credit Insurance.  New York City.  Negotiated a six figure cash settlement on bad faith violation of territorial limitations on credit insurance with Continental Insurance Company on behalf of their New England general agent at initial pre-litigation demand conference, including an enforceable permanent injunction.

Miles v. Sierra Club:  Jury trial, libel per se and falsity found. On appeal.

Montie S. Day, Esq. v. Robert W. Mills, Esq.  Hired one month before trial and successfully prosecuted a 14 week bench trial, $1.21 million dollar decision by Court including granting of motion to amend complaint to add cause of action for conversion.  Affirmed in full, opinion 5/3/01, 1 DCA.

Scentique, Ltd. v. Rosedust and R.F.M. Industries.  Prosecuted trademark and copyright infringement.  Won permanent injunction recovering product line worth millions in annual sales.

Schwartz v. NetCap Holdings et alia.  IPO fraud and corporate director fiduciary duty.  Successful defense of directors in multi-million dollar investment fund disappearance. Via cross-complaint, won $2.9 million judgment against corporate president while defending *de facto* director.

Sierra Lakes Reserve v. Flynn & Stewart.  Prosecuted law firm for breach of fiduciary duty, over-billing and "soap opera" misconduct detrimental to client's interests.  Negotiated reduction of over-billed legal fees from $200,000 to $45,000 payment on a no confidentiality basis.

Terrill v. UNUM, U.S. District Court for the District of Maine:  Successfully negotiating a $3.4 million net cash to client settlement to overturn exercise of a 30 day no-cause termination clause against plaintiff general agents.  $234,000 fee award.

**Legislation**:  Conceiving, drafting and obtaining enactment of changes in State law (a) to allow manufacture, sale and export of liquor filled chocolates; and (b) to allow, subject to safety provisions, commercial sales by minors (See Title 8, Calif. Administrative Code section 11706). Staff, Assembly Ways & Means; Intern, Joint Committee on Higher Education.

**Community leadership and activities:** Superior Court of California Speaker Outreach Program, Bench Bar Speakers Bureau; Emeryville Chamber of Commerce (Em Pac—won 72% of vote re Pixar Expansion in Emeryville, 2004), Oakland Chamber of Commerce committees: Small Business Advocacy; Planning & Construction; Paul Harris Fellow, Director for Oakland Rotary (Chaired Committees on: Youth Services; By-Laws; Ethics; President's Special; member World Community Service Committee).  Multiple Honoree for Rotary Foundation; Marcus Foster Institute for the Oakland Public Schools (founder, Role Model Task Force; Principal for a Day; Career Week); Director, and *pro bono publico* Legal Counsel since 1982, Modern Greek Studies Foundation, San

Francisco.  Blue Star Mothers of California (with children on active duty overseas).  Member American Institute of Architects, San Francisco Chapter (Urban Design Committee, Presidio Project). Member, Media Alliance.  Member, Board of Directors, Goodwill Industries of the Greater East Bay, Inc. (Committees: Management Information Services; Vice-Chairman, Human Services); Director, Lincoln Child Center; City of Oakland Long-Range Planning Conference participant.  Institute of Urban Affairs (San Jose).  City of Oakland Police Review Board; Alameda County Commission on Personal & Social Responsibility & Self-Esteem; Vice-President, Government Affairs, Chabot Canyon Homeowner's Association.  Oakland Heritage Festival Committee.  Bay Area Blues Society. Caravan of All Stars Blues Band. Underwriter, Tango Argentino, Herbst Theatre, San Francisco. CableCar Chorus (Barbershop, 2nd place, regional competition, 2002)

**Publications:** (exemplars), *Compensation of Federal Judges,* Editorial, Oakland Tribune, republished, The Advocate; Publisher, Editor-in-Chief, The Verdict, continuing contributing writer; *The Trial of Socrates,* The Verdict; Editor & Publisher, *Enforcing Civil Rights in the State Court System* (Author, chapter on attorney fees); *The Marshall Papers*, the Recorder, Author, *Voyage to Ithaca*, in The Forum for the California Trial Lawyers Association; Technical Reviser: McGoey, Chris, *CPP, SECURITY, Adequate or Not, The Complete Guide to Premises Liability Litigation*. Aegis Books, 1989; Publisher of monthly On the Up & Up; Publisher, Special Verdict monthly.. "Default and Default Judgments, *The Verdict* (01/03). Child Labor Guide for Employers. *Prosecutors in the Juvenile Court*, 5 Pepperdine Law Rev. 740 No. 3 (1978); "*Independent Contractor/Employee Taxation"* for Oakland Chamber of Commerce Advocate;

**Teaching, Lectures, Seminars**: University of California Faculty (paralegal program) and Invited Guest Lecturer, Institute of Governmental Studies; Teaching Ass't., Univ. of Calif., Davis: Scientific Bias & Social Myth; Guest lecturer, Law School;  Adjunct Professor of Law, J.F.K.U.(6 years); Lecturer, Calif. Highway Patrol Academy, Chabot College.  Tax Free Exchanges, C.A.R., Commercial Free Speech under the First Amendment; Address to the California Society of Enrolled Agents: Independent Contractor or Employee--Guess Wrong and You're Out of Business; Numerous seminars for lawyers through Consumer Attorneys of California, Alameda Contra Costa Trial Lawyers Association, and California Trial Lawyers Association (partial list: Expert Witnesses; Effective Fee Applications; Evidentiary Problems; Recovering Fees in Business Related Civil Rights Litigation in State Courts; Attorneys Fees).  Numerous other lectures.

**Music & Arts:** Rotary Arts Award (author of performed stage play).  Member, East Bay Blues Society's official band: Caravan of All Stars (American Music Awards, Vallejo Blues Festival, Hayward/Russell City Blues Festival &c., also played with Alvon Johnson and His Allstars, James Brown Jr.,  Teddy "Blues Master" Watson &c., and on double bill with Big Brother & The Holding Co.).  Patron, S.F. Opera.  Tango aficionado; danced in Paris, Rome & Buenos Aires.  Tango Stage Performances 2002 and 2005 (*Nonino* and *Por Una Cabeza*), Member, Cable Car Chorus (singing lead, 2nd place, 2002 Calif. competition).  Published poems; Cape Cod attendee, SEAK Conference on Legal Fiction for Lawyers (2003).