DAVID M. HELBRAUN (SBN 129840)
**HELBRAUN LAW FIRM**
180 Sutter Street, Suite 200
San Francisco, California 94104
Telephone: (415) 982-4000
Facsimile: (415) 352-0988

DAVID HICKS, APLC (SBN 053750) (Fee Counsel)
2200 Powell Street, Suite 990
Emeryville, CA 94608
Telephone: (510) 595-2000
Facsimile: (510) 594-9555

Attorneys for Plaintiff
STEPHANIE HARRINGTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| STEPHANIE HARRINGTON, | ) | Case No. C04-00958 JSW |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **DECLARATION OF STEPHANIE HARRINGTON IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS** |
| CITY OF NAPA, a municipal entity, POLICE OFFICER DEBBIE PEECOOK, POLICE OFFICER BRETT POTTER, in their individual and official capacities, and DOES 1-100, Jointly and Severally, | ) | Date: October 14, 2005
Time: 9:00 a.m.
Court: 2, 17th Floor |
| Defendants. | ) | Honorable Jeffrey S. White |

I, Stephanie Harrington, do declare:

1. I am the plaintiff in this action. If called to testify I could and would competently testify to the following.

2. In the three or four months following my arrest on May 25, 2003, I communicated to the City of Napa Police Department and the City of Napa City Manager that I was ready and willing to resolve my complaints about the City of Napa Police Department and Officers Debbie Peecook and Brent Potter if the City would just pay for some physical therapy I needed as a result of the injuries they inflicted on me. As the Court knows from the trial, I had just had a course of physical therapy in the weeks before the arrest, and I knew my health insurance would not pay for

physical therapy again so soon after the previous treatments in March, April and May 2003.

3. When I spoke to the City Manager, Patricia Thompson, I specifically mentioned physical therapy, as her notes of our phone call confirm. I believed that about two thousand dollars would be sufficient. The City never offered me anything to address my concerns.

4. When the first Internal Affairs investigator, Steve LaVoy, came to see me a few weeks after the arrest, he seemed sympathetic, and specifically said something to the effect that he was surprised Officers Peecook and Potter had not used the wheelchair to take me out. Officer LaVoy was replaced by Sgt. Gil Gallegos, and as of that point in time I feel the City and the Police Department went into "denial" mode, and absolutely refused to acknowledge that something wrong had occurred when I was arrested, and refused to even consider any modest requests for help getting some medical treatment.

5. I had hoped the pain in the back of my head would go away with time and patience, using the self-management pain techniques my physical therapist had previously taught me. I naively believed the pain would go away in part because lying down and ice seemed to help temporarily, in part because in the past I had always been told I needed to be extra patient in waiting for pain to go away because of my use of crutches, and in part because I just had not believed that being yanked on the shoulder could cause any major new injury. I have seen my doctors so much over the years about pain in the shoulder and neck, that I think we all just assumed it was the same thing as before, even though it was more painful. In retrospect, I wish I had been more insistent about the injury a lot sooner, but I typically don't like to go to the doctor unless I absolutely have to, and I waited months before asking to see a specialist. Lack of funds kept me away, too.

6. It was after I saw the specialist, Dr. Bodor, in November 2003, that I finally decided I should hire a lawyer to help. Dr. Bodor helped me to understand that I had an inflamed occipital nerve (occipital neuralgia), and that Officer Peecook jerking on my shoulder most probably caused the inflammation of the nerve. My mother was very nervous about suing the police, and repeatedly told me so.

7. It was very hard to find a lawyer to represent me. I spoke to about twenty lawyers in

**DECLARATION OF STEPHANIE HARRINGTON IN SUPPORT OF PLAINTIFF'S MOTION FOR FEES AND COSTS                                                         Case No. C-04-00958 JSW**                    2

the City of Napa, none of whom would take the case because it is a small town and they did not want to sue the police there. One of them told me Officer Debbie Peecook had a reputation for being unnecessarily rough with people. Some of the lawyers in Napa I spoke to recommended I look for a lawyer outside of Napa.

8. I spoke to three or four lawyers in Santa Rosa, and about ten lawyers in San Francisco and Oakland, all of whom either said they would not take my case, or told me they would get back to me and either did not get back to me, or wrote to me saying they would not represent me. I began to fear finding a lawyer was hopeless.

9. One lawyer I spoke on the phone with, Michael Haddad of Haddad & Sherwin, in Oakland, suggested that I call David M. Helbraun and ask him to represent me. Mr. Helbraun agreed to meet with me, and, shortly thereafter, agreed to represent me in this case.

10. The City Attorney's Office took the same position the Police Department had: they said that nothing wrong had occurred, that the officers never hurt me, that I had not been injured, and that I was not telling the truth. They were never willing to discuss any settlement, not even the modest physical therapy treatment I proposed. Instead, they subpoenaed every physical therapist and doctor I have seen for several years, and took my deposition for about 16 hours spread out over three separate days. I felt attacked by them throughout the litigation, even though it was the officers who did something wrong, not me. I am glad the jury understood the truth, and I feel vindicated as a result of their verdict, which was more than I had been trying to settle for until I became offended by defendants' stonewalling me and insistence on putting me through the ordeal of a trial.

11. Because I have been told by my attorney that after the verdict the jury said they would have awarded more damages if the medical documentation had shown that I complained of the pain in the back of my head a lot sooner, I have come to realize that I should have been a lot clearer a lot sooner with my doctors, but, again, I didn't want to believe it was serious at first, I'd hoped it would go away, and I think because of my previous history with pain in that general area, my doctor and I just assumed it was the same problem as I'd had before.

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct to my personal knowledge and belief, that if called to testify I could and would competently testify to the foregoing, and that I executed this Declaration on the 5th day of September, 2005, in the City of Napa, California.

_____/s/_____
Stephanie Harrington

DECLARATION OF STEPHANIE HARRINGTON IN SUPPORT OF PLAINTIFF'S MOTION FOR FEES AND COSTS
Case No. C-04-00958 JSW            4