UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE HARRINGTON, | No. C 04-0958 JSW (JL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION RE PLAINTIFF'S MOTION** |
| CITY OF NAPA AND POLICE OFFICERS PEECOOK and POTTER, | **FOR ATTORNEY FEES** **(Docket # 166)** |
| Defendants. | |
| _____/ | |

**Introduction**

This case squarely presents the difficult problem of reconciling a good faith but disproportionately large attorney's fees claim with a relatively small Plaintiff's jury verdict. The amounts in question are $287,900 in attorney's fees arising from a $10,000 verdict.

While the cases offer a multiplicity of factors for trial courts to consider – both quantitative and qualitative – and sometimes both, the decision is still not easy. The risk of a subjective judgment is particularly high, where one reviewing judge might well consider the above disparity "obscene", while another concludes it is reasonable. (*See Morales*, *infra*.)

Accordingly this memorandum is more of a report than a recommendation.

Defense counsel seeks to reduce the award of fees on the basis of the limited degree of success factor first enunciated in the *Hensley* decision, *infra*. Counsel for the plaintiff seeks the full lodestar amount less a five per cent discount. How the degree of success is

1 calculated is obviously the problem – do we count causes of action? Injuries ? Medical
2 conditions? Lost earnings? Do we compare the prayer in the complaint with the verdict? Or
3 the demand for pre-trial settlement? Or the amount requested of the jury at trial? Are intangible
4 benefits such as vindication of civil rights included?

5     It is clear that the court must apply the twelve *Kerr* factors, that the verdict in this case is
6 not de minimis under *Farrar*, and that the hours spent are not challenged as unreasonable –
7 so the lodestar calculation is established, and the court has broad discretion.

8     The intent of Section 1988 is to attract competent lawyers to handle arguably unpopular
9 or unremunerative causes, such as civil rights claims, by guaranteeing reasonable
10 compensation with reference to counsel's skill and reputation in the legal community. The
11 lodestar figure is presumably reasonable. Adjusting it after it has been calculated on the
12 basis of subsumed factors of reasonableness is disfavored.

13     Unlike the fee shifting provision of the PLRA, there is no cap and no set hourly rate.
14 Hence there is no compulsory pro bono overlay applicable to this case. Plaintiff's counsel is
15 entitled to fair recompense.

16     The question appears to be, did the Plaintiff achieve significant results related to the
17 core facts of the case?   The answer in this case appears to be yes, and so there is a
18 satisfactory basis for a substantial award of attorney's fees.

19     The analysis follows.

**Factual Background**

21     Plaintiff Stephanie Harrington is 4 feet six inches tall and weighs 110 pounds. She has
22 hip dysplasia and Brachyolmia (a congenital syndrome causing short stature and bone and
23 joint abnormalities) and walks with crutches or uses a wheelchair. On May 25, 2003 she had
24 an argument with her then-husband John, who is 5 feet ten inches and 175 pounds. They
25 fought over the handset of the telephone, trying to dial 911.  When the police arrived John
26 emerged from the bedroom and showed them a scratch on his chest which he blamed on
27 Plaintiff. The police arrested her. Plaintiff claims that Officer Debbie Peecook

> " [v]iolently and without good cause under the circumstances twisted Plaintiff's hand and placed the handcuffs on Plaintiff, squeezing them on tightly and painfully. Officer Peecook then violently and without good cause under the circumstances yanked Plaintiff up forcefully, causing damage to Plaintiff's back and spine, and causing Plaintiff to cry out in pain. Officer Peecook instructed Officer Potter to assist her in dragging Plaintiff out of the house without her crutches."

(Amended Complaint at 4).

This action caused "whiplash," resulting in a severely debilitating neck injury and occipital neuralgia.

Plaintiff delayed seeking treatment because she had just had a course of physical therapy and her health insurance wouldn't cover another one so soon. She hoped the pain would go away if she used techniques that her physical therapist had taught her and in fact didn't realize at first that her neck and shoulder pain were related to the injury because she had similar pain before. (Harrington Decl at 2). When Plaintiff finally saw a specialist, she received nerve block injections in her neck and occipital region and claims she still has limited ability to work and take care of her children due to severe continuing pain.

She asked the City of Napa to pay for her physical therapy in the amount of about two thousand dollars, but the Napa City Manager, Patricia Thompson, refused. Plaintiff filed a formal complaint in July 2003, and it was formally rejected in September. After a long search for an attorney, (she couldn't find anyone in Napa willing to sue the Police Department), Plaintiff filed suit (Plaintiff's Decl. at 1). Defendants explain that they denied her claim because she did not provide a specific dollar amount for her expenses and therefore failed to satisfy the procedural requirements for a claim against the city.

In March 2004 Plaintiff sued the City of Napa and the two police officers. She alleged violations of 42 U.S.C. §1983 and her Fourth Amendment rights against arrest without probable cause and use of excessive force; as well as assault, battery, negligence, and disability discrimination and violence or threat of violence based on disability, in violation of Cal. Civ. Code § 51.7 (First, Fourth, Fifth, Sixth and Seventh Causes of Action). She alleged that the City of Napa engaged in unlawful hiring, training and ratification of the officers' wrongful acts (Second Cause of Action). She also alleged disability discrimination under 42

1  U.S.C. § 12115 et seq., the American with Disabilities Acts ("ADA") against all Defendants
2  (Third Cause of Action), for a total of seven causes of action.

3  Plaintiff sought general, special and punitive damages, a civil penalty under Cal. Civ.
4  Code § 52(b), and an injunction against the City of Napa to require policies and procedures
5  that conform to the ADA and the Rehabilitation Act of 1973.

6  In her FRCP Rule 26 initial disclosure Plaintiff claimed in excess of $1,000,000 in
7  compensatory and punitive damages against all Defendants. (David Jones Decl., Exh. 1), as
8  well as her medical expenses of about $10,000.

9  When the parties were required to choose a form of ADR soon after commencement of
10 the case, counsel for defendants stated that he would only agree to Early Neutral Evaluation,
11 because he "did not want to give any indication that they would ever pay anything on this
12 case." (Helbraun Decl. at 3)

13 The parties embarked on discovery. Defendants deposed Plaintiff for 16 hours over
14 three days. (Harrington Decl. at 3) A total of 24 depositions were taken in this case, including
15 five expert depositions and the three individual parties. Of the other 16 depositions, 13 were
16 noticed by Defendants and three by Plaintiff. Defendants noticed depositions of Plaintiff's
17 mother, daughter, grandmother, ex-husband, and close friend, as well as eight of her doctors
18 and physical therapists for several years prior to the incident. Plaintiff's counsel had to travel
19 from his office in San Francisco to Napa for the depositions. While he realized when he took
20 the case that he would need to travel to Napa, the number of depositions required substantial
21 unanticipated additional time. Defendants noticed 40 video deposition excerpts of Plaintiff's
22 deposition, requiring her counsel to review each one and request additions to complete the
23 testimony, but Defendants used only one at trial. (Plaintiff's P&A at 2, fn 1).

24 The court granted Defendants' motion for partial summary judgment on July 18, 2005,
25 dismissing all claims against the City of Napa and all but one claim against the individual
26 police: excessive force in violation of Plaintiff's Fourth Amendment rights under § 1983.

27 Following summary judgment Plaintiff demanded $420,000 to settle her case
28 ($300,000 in damages and $120,000 in attorney's fees). (Jones Decl. at 3, Exh 2).

Defendants made no offer at the settlement conference conducted by Magistrate Judge Elizabeth Laporte. (Plaintiff P&A at 3). Judge Laporte ordered defense counsel to approach the Napa City Council for settlement authority. (Id.; Helbraun Decl. at ¶ 8).  Two weeks later, during a break in an expert deposition, Plaintiff informed defense counsel that she was willing to reduce her demand. (Id. at 3-4; Helbraun Decl. at ¶ 8).

Defendants made no offer in response to either Judge Laporte's order or Plaintiff's reduced demand. Defendants say that they could not make a settlement offer without Plaintiff's attorney's billing records which was only turned over after Defendants were served with the Motion for Attorney's Fees. (Jones Decl. at 4).

Unable to settle, the parties went to trial. Plaintiff asked the jury to award her $100,000 in past and future wages and lost earning capacity, $75,000 for pain and suffering and in excess of $10,000 for medical expenses, for a total of $185,000. (Jones Decl. at 4). The jury returned a verdict for Plaintiff on her excessive force claim, awarding her $10,000. By special verdict the jury found that Officer Peecook used unreasonable and excessive force, that Officer Potter wrongfully failed to intervene to prevent Peecook's use of excessive force and that Plaintiff was injured by both.

Defendants agreed on the record to stipulate to the judgment in the first phase and waive their post-judgment motion and appeal rights, including costs and attorney's fees if Plaintiff waived the punitive damages phase of the trial. (Plaintiff's P&A at 3).

Plaintiff's attorney attempted to meet and confer regarding the substance of the fee motion prior to filing, via telephone. Plaintiff's counsel initially claimed approximately 750 hours of work on this case, which would have totaled $337,500, but then reduced the total figure to $287,900. Counsel discounted all hours worked in the case.  Plaintiff now claims 722 hours of work at $400 per hour, 9.66 paralegal hours at $100 per hour (less 5%), and 29.7 hours spent by Mr. Hicks on the motion for attorney's fees at $520 per hour (less 5%). Plaintiff's counsel contends he "exercised significant billing judgment . . . excluding hours that may well be compensable." (Plaintiff's P&A at 10)

Plaintiff also seeks costs of $29,392.00. (Helbraun Decl 27-29). "It is well-established that [out-of-pocket] costs are recoverable as part of a fee award. *Lucas v. White*, 63 F.Supp.2d 1046, 1063 (N.D. Cal. 1999), *citing Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), *amended* 808 F.2d 1373 (9th Cir. 1987). Costs have already been taxed by the Cost Bills Clerk at $13,319.24.

## Legal Arguments

Defendants argue that Plaintiff's hours should be reduced because Plaintiff was successful on only one claim against only two defendants. Defendants compare and contrast the $10,000 jury award with the $185,000 demand and conclude it is an extremely limited recovery.

Plaintiff argues that the jury award validates her claim of a constitutional violation, that $10,000.00 is significantly higher than her initial request of $2,000 for the cost of physical therapy and that the amount is not nominal. Plaintiff also asserts that the vindication of her constitutional rights should be taken into account in evaluating the results obtained to arrive at the reasonable number of hours for the lodestar.

Finally, Defendants offer as a guide to the proper hourly fee the average hourly rate for civil attorneys in this geographic area, while Plaintiff believes counsel is entitled to a fee concomitant with the rates of lawyers with equivalent experience and expertise.

## Legal Analysis

A court may grant reasonable attorney's fees to the prevailing party in a case brought under 42 U.S.C. § 1983, as provided in 42 U.S.C. § 1988. Plaintiff is the prevailing party because she received a jury verdict against the individual police officers. The court should calculate a fee award using the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The court determines the reasonableness of the hours by applying the twelve *Kerr* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions resolved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). In the case at bar the major factor in dispute is Number 8, the amount involved and the results obtained.

The court should first determine if the hours spent are reasonable and then if the hourly rate is reasonable before calculating the lodestar figure. All adjustments should be made before calculating the lodestar. Adjustments after calculating the lodestar are disfavored. *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996) (amended on denial of rehearing at 108 F.3d 981, adding to the official opinion that an award may be nominal if more than $1 if it is "de minimis,") *citing Corder v Gates*, 947 F.2d 374, 378 (9th Cir. 1992). However, as long as the district court makes only one adjustment per factor, either before or after the lodestar calculation, this is harmless error. *Morales, Id., citing Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1465 (9th Cir. 1988). There is a strong presumption that the lodestar figure represents a reasonable fee. *Morales, Id., citing Harris v Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994); *Oviatt v Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992).

**A. Is Plaintiff the Prevailing Party?**

To prevail does not require complete success, but only success on "'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the suit'" *Texas State Teachers Assoc. v. Garland Independent School District, et al.,* 489 U.S. 782, 791-792 (1989). In the case at bar the jury found for Plaintiff on her excessive force claim against both individual defendants, making her the "prevailing party."

**B. Are the Requested Attorney's Hours Reasonable in the Light of the Limited Financial Award Granted by the Jury in Comparison to the Amount Sought by the Plaintiff?**

Fees should only be wholly denied in a case in which the jury award is "nominal."

*Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005) ($15,000 compensatory damages and $20,000 punitive damages not nominal in § 1983 civil rights case. *Id.*; *see also Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (recovery of $17,500, though substantially less than what Plaintiff sought, was "not nominal").

Once it is determined that attorney's fees are warranted, the court employs a two part test: "(1) whether Plaintiff prevailed on unrelated claims ('[h]ours expended on unrelated unsuccessful claims should not be included in an award of fees'), and (2) whether 'the Plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *Thomas,* 410 F.3d at 649, *citing Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). Either of these two factors may justify reducing the hours.

**1. Should Plaintiff's Hours be Reduced Because of Time Spent on Unrelated Unsuccessful Claims?**

A court may reduce compensable hours for time spent on unrelated unsuccessful claims. Claims are related if they "'involve a common core of facts *or* are based on related legal theories.'" *Thomas*, 410 F.3d at 649. *citing Webb*, 330 F.3d at 1168 (emphasis in original). Even if claims are unrelated, hours spent on unrelated unsuccessful claims may still be compensated if such claims cannot be distinguished from, and may be helpful to, the successful claims. *Id.*

Although they were based on different legal theories, all claims in this case arise out of a single incident. Defendants here appear to concede that all of Plaintiff's claims are intertwined in such a way that determining how much of Plaintiff's attorneys' time was spent on unrelated unsuccessful claims would be impossible. "Assuming that plaintiff's litigation effort was inextricably intertwined . . ." (Defendants' Opposition at 6). Consequently it would be difficult if not impossible for the court to reduce the number of attorney hours to calculate the lodestar by subtracting hours spent on unsuccessful claims, since all claims arose from the same incident and cannot be distinguished from, and may be helpful to, the successful claims.

**2. Did Plaintiff Achieve a Significant Level of Success or was the Success Limited Warranting a Reduction of Hours?**

The Supreme Court has held that limited success in a case warrants a reduction in fees to an amount that is "reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 440. A court may determine this in several ways.

**a. Number of Successful Claims Versus Number Initially Brought.**

Failure on some claims does not determine how successful a case is. A plaintiff need not prevail on every issue and there is no strict mathematical calculus comparing the total number of issues in the case to those on which the plaintiff prevailed. *Gates v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1993). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435.[1]

**b. The Amount of Damages Awarded Versus the Amount of Damages Requested.**

A court may reduce the hours to calculate the lodestar if it finds that the jury award is smaller than the relief sought. However, the fee award need not be proportionate to the relief sought, and can be significantly higher. *Riverside v. Rivera*, 477 U.S. 561, 562 (1986). In *Corder v. Brown*, 25 F.3d 833, 836 (9th Cir. 1994), the Ninth Circuit examined whether an award of $24,000 was "limited" in comparison to the $1,000,000 the plaintiff originally sought. On remand the Court of Appeals directed the District Court to consider whether the amount of damages awarded was minimal in comparison to the amount requested. *Id.* at 836.[2] This Court could compare the jury award of $10,000 with Plaintiff's demand of $185,000 at trial and conclude that the award was "limited." However, the damages award is not the only factor which determines the degree of Plaintiff's success and her entitlement to attorney fees.

---

[1] "For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Hensley*, 461 U.S. at 435 n.11.

[2] Additionally, the court in the *Corder* case wanted the District Court to take into account the small number of Defendants Plaintiff was successful against, three (3) law enforcement officers, versus the 41 law enforcement officers, two (2) counties, and two (2) cities, initially sued. *Corder*, 25 F.3d at 834-3.5 Not accounting for the claim against Does 1-100, Plaintiff in the instant case succeeded against two (2) out of the three (3) Defendants. However, of those two Defendants, Plaintiff was only successful on one (1) out of the original six (6) claims, a serious consideration under the *Hensley* analysis used by the court in *Corder*.

**c. Vindication of a Constitutional Right as an Element of Relief.**

In a similar case, *Morales v. City of San Rafael*, 96 F.3d 359, 364-365 (9th Cir. 1996), the court considered the policy implications of the plaintiff's verdict in determining how "substantial" the award was. The plaintiff in that case recovered $17,500.00 in damages for an unlawful arrest by a police officer in violation of § 1983. *Id.* at 360. The district court decided that plaintiff was entitled to "low" fees in light of his limited success and awarded $20,000.

The Ninth Circuit reversed the district court, holding that the plaintiff's victory "served the public purpose of helping to protect [Plaintiff] and persons like him from being subjected to similar unlawful treatment in the future." *Id.* at 364-365. The court went on to say that "in determining a reasonable fee award ..., the district court should consider not only the monetary results but also the significant nonmonetary results [Plaintiff] achieved for himself and other members of society." *Id.* at 365. The court found that the award, although low, was not nominal, under *Farrar v. Hobby* (Civil rights plaintiff who obtained award of one dollar on claim for 17 million dollars in compensatory damages was not entitled to any attorney fee under civil rights attorney's fee provision, notwithstanding that he technically qualified as "prevailing party" under statute.) 42 U.S.C.A. § 1988; 506 U.S. 103, 113 (1992) *cited in Morales,* 359 F.2d at 363. In the case at bar, Plaintiff's award of $10,000, especially when measured against her final demand before the jury of $185,000, is not "nominal." Her monetary recovery of one eighteenth is far greater than the proportionally plaintiff's in *Farrar.*

The Ninth Circuit in *Morales* reversed the district court's award of $20,000 in attorney's fees, because the judge did not apply the *Kerr* factors, did not calculate a lodestar figure and did not consider that the plaintiff had achieved nonmonetary success by sending a message to law enforcement not to use excessive force. *Id.* at 363-364.

Although the "extent of success" may be measured by the amount of money received, the Ninth Circuit in *McGinnis* found that fees should be awarded in part for the benefit conferred on others:

> The "private attorney general" theory lets the attorneys recover more than the benefit to their client would make reasonable, because they also confer benefits on others throughout society by winning a civil rights claim. But the benefit is not infinite. What the lawyers do for their actual client is an important measure of "extent of success." The

district court must reduce the attorneys fees award so that it is commensurate with the extent of the plaintiff's success.

*McGinnis v. Kentucky Fried Chicken of California* 51 F.3d 805, 810 (9th Cir.1994)

For the reasons above this court could find that Plaintiff's jury award was not "nominal" and furthermore that her victory confers a substantial nonmonetary benefit on both Plaintiff and to the public, which justifies a higher fee than a reasonable client would have paid solely for the monetary benefit conferred.

**3. Is the Hourly Rate Reasonable?**

Reasonable hourly rates under § 1988 should be based upon prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The burden of proof is on the applicant to present evidence besides the attorney's own affidavit to show that the requested fees are in line with those prevailing in the relevant community for similar services by lawyers of reasonable skill, expertise, and reputation. *Id*. at 896.

Fees awards should not vary depending on whether a plaintiff is represented by private counsel or nonprofit legal services. *Id*. at 894. Hourly rates for civil rights cases should be determined with reference to cases of comparable complexity across the full spectrum of federal court litigation. *Trevino v. Gates,* 888 F.Supp. 1509, 1519 (9th Cir. 1995), vacated in part at 99 F.3d 911 (9th Cir. 1996) (holding that district court did not abuse its discretion in reducing attorney fees because the issues in the case were not complex.) However, the Ninth Circuit further held that the trial court erred by comparing the hourly rate the municipal defendant paid to its attorneys. The court found that such attorneys "are not acting as 'private' attorneys at all." *Id.* at 925.

In the case at bar, the trial court is in the best position to decide whether the issues in this case were complex or simple in setting a reasonable hourly fee.

Plaintiff seeks an hourly rate of $400 for Mr. Helbraun. (Plaintiff's Motion at 8). He has 19 years of experience as an attorney. His practice includes civil rights and police misconduct cases (*Id*. at 11; Helbraun Dec. para 7). He received his undergraduate degree from Yale and his law degree from Hastings. He received an "AV rating" from Martindale-Hubbell. "An AV rating reflects an attorney who has reached the heights of professional excellence. He or she

1  has usually practiced law for many years, and is recognized for the highest levels of skill and
2  integrity." (Helbraun Decl. at 2)

3      Plaintiff lists billing rates for attorneys with experience comparable to Mr. Helbraun's at
4  prestigious San Francisco firms. (Plaintiff's Motion at 11-12). Mr. Helbraun's own declaration
5  confirms these rates. His declaration further states that Defendants refused to conduct
6  meaningful settlement talks and took unnecessary depositions, raising the cost of the
7  litigation. (Helbraun Decl. ¶ 8-21). While Defendants should not be penalized for the zealous
8  advocacy of their attorney, the absence of any settlement offer and the amount of discovery
9  prompted an equally zealous response from Plaintiff's counsel, which tends to justify the
10 number of hours he spent on Plaintiff's behalf.

11     Plaintiff requests a fee of $520 an hour for Mr. Hicks, for the fee motion. (Plaintiff's
12 Motion, at 12). Mr. Hicks has 33 years of experience as an attorney. *Id*. Plaintiff also submits
13 the supporting declaration of Mr. Hicks with respect to the work of Mr. Helbraun. In addition,
14 Plaintiff submits the declaration of Mr. Pearl, who has extensive experience in matters relating
15 to attorney's fees. Mr. Pearl lists the prevailing rates at many prestigious Bay Area firms for
16 attorneys of varying years of experience to place Mr. Helbraun's
17 requested rate in the context of other federal litigators. (Pearl Decl. para 8). Plaintiff adds the
18 declaration of Assistant Oakland City Attorney Maria Bee who recommends Mr. Helbraun as
19 a competent civil rights attorney.

20     The affidavits of the attorneys, along with the other supporting documents and affidavits
21 justify the hourly rates claimed, in the context of federal civil rights litigation for the relevant
22 legal community, although this court questions whether Mr. Hicks should be paid more than
23 Mr. Helbraun, who could have prepaid the fee petition himself.

24     Defendants argue that the court should instead look at the Bureau of Labor Statistics to
25 determine a reasonable fee. (Defendants' Opposition at 15, and Req. For Judicial Notice)
26 However, under §1988 a reasonable fee is based upon the experience of the attorney, the
27 results obtained and the nature of the case, not an average for attorneys in the area. The
28 cases cited by Defendants from the Bureau of Labor Statistics do not apply. Moreover,

1 Defendants fail to counter the declarations and statements presented by Plaintiff. Defendants
2 fail to offer an alternative hourly rate that is applicable under § 1988.

3 Plaintiff also argues for an enhanced hourly rate based on special skills and
4 experience of her counsel. Novel or complex issues do not determine whether to increase a
5 fee award. *Blum*, 465 U.S. at 898. Indeed an upward adjustment is only appropriate where
6 the applicant offers specific evidence that the quality of service rendered was superior to what
7 one should reasonably expect and that the degree of success was exceptional. *Hensley*, 461
8 U.S. at 449. The fact that the requesting attorney litigated the case on a contingency fee basis
9 does not justify enhancement. *Davis v. City and County of San Francisco*, 976 F.2d 1536,
10 1549-50 (9th Cir. 1992). The court in *Davis* found that the risk of no-fees is not relevant. *Id*.

11 Plaintiff suggests that because of the risk in a contingency fee situation, Plaintiff's
12 attorney should be awarded an enhancement of $75 per hour. Enhancement may be
13 appropriate because of the results achieved or the public interest value of the case. In light of
14 the initial demand by Plaintiff, the results achieved in this case are not extraordinary. Further,
15 the value to the public cannot be considered sufficient to warrant an enhancement.

### Conclusion

This court must first calculate the lodestar amount, the reasonable number of hours multiplied by a reasonable hourly rate. To determine how many hours Plaintiff's counsel reasonably expended on her case, the court takes into account the result obtained, both in terms of the jury verdict and award and the vindication of Plaintiff's constitutional right and the public policy that serves.

The court should next decide the reasonable hourly rate for Plaintiff's counsel in light of what other attorneys with equivalent experience and expertise charge. The court should then multiply the reasonable number of hours by the reasonable hourly rate to calculate the lodestar.

The lodestar figure is presumptively the correct award to Plaintiff as prevailing party. It should not be reduced except under extraordinary circumstances, which do not exist here. There is also no justification for an enhancement.

Plaintiff gambled when she took the case to trial after the trial judge trimmed it to two defendants and one cause of action. But that was not unreasonable. Defendants made no offer to settle. Defendants also gambled, after winning much but not all of their case at summary judgment. The court's decision on summary judgment should have been a signal to seriously consider settlement, but Defendants took the case to trial. The jury handed Plaintiff a victory, and now Defendants have to pay a price, perhaps higher than they gambled on.

Respectfully submitted,

DATED: December 12, 2005

_____
JAMES LARSON
Chief United States Magistrate Judge